CITIZENS' STREET RAILWAY CO. *v.* AFRICA.

(*Knoxville.* November 6, 1897.)

1. CORPORATIONS. *Construction of charters is strict.*

Charters are strictly construed against the grantee. (*Post, p. 44.*)

Case cited: 3 L. R. A., 174, and note.

2. STREET RAILROADS. *Grant of right to occupy street.*

It is essential to the lawful occupation of the streets of a city by the lines of a street railway company that the railway company's charter shall grant it that right, and that the city shall assent thereto by ordinance strictly conforming to the charter provisions. Such grant cannot be conferred by ordinance alone, and, if conferred by charter, is inoperative until assented to by valid ordinance. (*Post, pp. 43, 44, 51.*)

Cases cited and approved: Railroad *v.* Adams, 3 Head, 597; Railroad *v.* Memphis, 4 Cold., 406; Railroad *v.* Bingham, 87 Tenn., 522; 77 Fed. Rep., 507.

3. SAME. *Must build upon line fixed by charter.*

A street railway company must build upon the line fixed by its charter. Its lines and their termini must conform strictly to the calls of its charter and the ordinances. Larger latitude is allowed, for obvious reasons, in the location of the lines of commercial railways than in the location of the lines of street railways. (*Post, pp. 43–48.*)

Cases cited: 37 Ohio St., 556; 85 Ala., 600.

4. SAME. *Same. Example.*

A street railway company whose route is designated in its charter by streets, cannot abandon the route so designated, and lay its road on other streets, under a city ordinance authorizing the same, as the charter and the ordinance must conform to give a valid grant on any street of the city. (*Post, pp. 38–42, 51.*)

Citizens' Street Railway Co. *v.* Africa.

5. SAME.  *Powers under city charter to make grants to, defined.*

A provision in a city charter empowering the municipal authorities to grant, by ordinance, the right of way through the streets of the city, for the purpose of street railroads, does not authorize the city to grant a right of way to a street railroad company over other streets than those named in the charter of the company in designating its route.  (*Post, pp. 48–51.*)

Act construed: Acts 1885, Ch. 8 (ex. ses.).

6. SAME.  *Charter provision as to extensions construed.*

A provision in the charter of a street railway company authorizing it, in addition to laying its road on streets designated therein, to build "extensions" from any of the lines of the company, on and along any other streets to which the municipal authorities may consent, does not authorize it to deviate from the charter route.  (*Post, pp. 36, 37, 46–48.*)

Act construed: Acts 1875, Ch. 142.

8. REHEARING.  *Not granted, when.*

A rehearing will not be granted upon a question made and considered on the original hearing, though not referred to in the written opinion, where the Court is content with its former decision.  (*Post, pp. 53–55.*)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. H. B. LINDSAY, Ch.

TEMPLETON & CATES and LUCKY, SANFORD & TYSON for Railway Company.

WEBB & McCLUNG for Africa, trustee.

J. W. CALDWELL and WASHBURN, PICKLE & TURNER for Knoxville.

WILKES, J.    These causes involve the rights of the Citizens' Railway Co. to lay tracks and operate street railway lines over the streets of the city of Knoxville.    The contest is between that company, the city of Knoxville, and J. Simpson Africa, trustee, the representative of a rival line, and is one feature in a long and bitter litigation between these competing railway companies, in which the city has been more, or less interested.

There are really but two questions before us for consideration, but, as is usual in such heated controversies, there is much in the record and contentions of counsel not material to the real questions involved.    The original bill sought to enjoin the defendants from interfering with the Citizens' Railway Company in the construction of its tracks upon Depot Street, between Gay and Jacksboro Streets, and to enjoin the transfer from defendant, Africa, trustee of certain obstructive tracks, to the Knoxville Street Railway Company, and a mandatory injunction was sought to remove obstructions from Church Street, Oak Street, Central Avenue, and certain other streets named in the bill, all within the city of Knoxville.    The several defendants answered the bill, denying the complainants' right to the relief sought.    Afterwards the city filed its bill against the Citizens' Railway Company, seeking to enjoin it from constructing its track on Depot Street, between Gay and Jacksboro Streets, and afterwards filed an amended bill.    The substance of the prayer of these

Citizens' Street Railway Co. *v.* Africa.

bills is that the Citizens' Railway Company be perpetually enjoined from going upon any of the streets, or doing any work thereon, unless authorized so to do by ordinance duly passed thereafter by the Board of Mayor and Aldermen. The Citizens' Railway Company filed its answer and cross bill, and moved to dissolve the injunction and consolidate the causes. By consent the causes were consolidated, and an agreed statement of facts was made, depositions were filed, as well as documentary evidence, and the cause was heard by the Chancellor, who substantially granted the relief prayed by the city, and refused relief to the Citizens' Railway Company, and that company appealed. The Court of Chancery Appeals heard the cause, and affirmed the decree of the Chancellor, and the Citizens' Railway Company has appealed to this Court and assigned errors.

These errors are numerous, but may be treated together as presenting the rights of the Citizens' Railway Company, under its charter and the ordinances of the city of Knoxville, to occupy and build its road over certain streets of the city, the contention of the city being that in the majority of the cases there is such a discrepancy and deviation between the routes laid down in the charter and those specified in the ordinance of the city, as must vitiate and render null the rights of the Citizens' Railway Company; that upon other routes the charter gave that company no right, and the ordinances

of the city, though attempting to grant such rights, could not do so in the absence of legislative or charter authority granted by the Legislature, and, finally, that the Citizens' Railway Company had forfeited its rights by failing to build and equip its line within the time limited by the ordinances of the cities of Knoxville and North Knoxville.

The contentions of the Citizens' Railway Company are that the deviations and differences in route are but slight and immaterial, and that its failure to finish its lines within the time prescribed was caused by the obstructive tactics of Africa, trustee, and the action of the city authorities, and that, under the ordinances of the city, the time thus lost on account of adverse proceedings and obstructive measures was not to be counted in the limit fixed for the completion of the road. This is a general statement of the question presented by the record and assignments of error, the details of which will appear more fully hereafter.

It is necessary to state, briefly, the history and status of the line controlled by Africa, trustee. The Knoxville Street Railway Company was chartered January 2, 1876, under the general Act of the Legislature of Tennessee of 1875 relating to corporations. In its charter it is granted rights of way over many of the streets of Knoxville, specifically named, and was granted franchises generally over all streets of the city then existing or thereafter to be established. On the fifth day of July, 1892, the

city passed an ordinance revoking the grant as to
all streets except those already occupied.  The Knox-
ville Street Railway Company having passed into the
hands of Africa, trustee, he claimed that his grant,
under the ordinance of 1876, covered all the streets
of the city, and, about midnight on the twenty-ninth
of September, 1895, or the morning of the thirtieth,
laid short pieces of track at five places on streets
unoccupied, to wit, at each end of the Church and
each of the Oak Street bridges, and at a point on
Central Avenue.

The city thereupon filed its bill, alleging the in-
validity of the ordinances of 1876 and the want of
authority to place the track as laid, but this bill
was afterwards dismissed by the city.   Africa, trus-
tee, then filed a bill in the Circuit Court of the
United States for the Eastern District of Tennessee,
against the Citizens' Street Railway Company and
the city, setting up his claim under the charter and
ordinance of 1876, asking a construction thereof and
an injunction against tearing up his track or ob-
structing the building of his lines.   Upon a final
hearing of this case in the United States Circuit
Court of Appeals, in October, 1896, that Court held
that the Knoxville Street Railway Company and Af-
rica, trustee, had a valid right of way only upon
certain streets authorized by the charter and ordi-
nances, and on which the right of way was defi-
nitely located, and not over all the streets of Knox-

ville then laid out or thereafter to be established. *Mayor of Knoxville* v. *Africa,* 77 Fed. Rep., 501.

The Citizens' Railway Company obtained its charter in August, 1895, under the general incorporation Act of 1875, and, in pursuance of its charter provisions, applied to the city of Knoxville for street franchises, and the city, on August 20, 1895, by ordinance, granted a franchise, under which it began the construction of its line. On the night of September 29, 1895, as before stated, the manager of Africa's line laid several short pieces of track on different streets, among others on Central Avenue where it crosses Broad Street, both north and south of that street. These were obstructions to the building of tracks by the Citizens' Railway Company, and were so intended. And a bill was filed enjoining it from removing these tracks. This injunction was maintained until October, 1896, when it was dissolved, and the final decree, already referred to, was entered in the United States Circuit Court declaring these tracks unlawful obstructions. In the meantime, on the twenty-fifth of November, 1895, the city passed an amended ordinance granting to the Citizens' Railway Company the right to occupy additional routes, as follows: (1) Beginning at the corner of Park and Gay Streets, thence west along Park Street to Broad, thence south on Broad to Depot, thence northwardly on Depot to Jacksboro to the north corporation line of Knoxville; also beginning at the intersection of Broad and Depot Streets, thence

east on Depot to Gay Street, and to the connection
with the line of the Rapid Transit Company, on Gay
Street; (2) beginning at the corner of Luttrell and
Park Streets, thence north on Luttrell Street to the
north corporation line of Knoxville; (3) beginning at
the corner of Luttrell Street and Fourth Avenue,
thence west to Central Avenue, thence west on south
side of Central Market to North Gay Street, thence
on North Gay Street south to William Street, thence
on William Street north to Park Street.

The ordinance, thus amended, further provided that
all the rights and privileges therein granted should
become null and void unless the company, by the
first of January, 1896, should build its tracks from
the corner of Gay and Depot Streets, or from the
corner of Park and Gay, to the north corporation
line of North Knoxville, and put its line in opera-
tion by April 1, 1896, adding, "delays caused by
legal or providential interference, or other unavoid-
able causes, to be excepted from said time." Then
follows specific directions as to how the track should
be laid on the streets, and giving the right to dig
them up and lay tracks until January 1, 1896.

On September 24, 1895, the city of North Knox-
ville gave the Citizens' Railway Company the right
to construct a line upon Central Avenue, from the
corporation line between the cities of Knoxville and
North Knoxville to the north line of the corpora-
tion of North Knoxville, but to be null and void
unless work should be begun with thirty days, and

16 P—3

the line be constructed before December 1, 1895, so that cars would be operated from the- Southern Railway depot to the north corporation line, and a deposit of $1,000 was required to comply with these conditions. On November 30, 1895, the city of North Knoxville passed two amendatory ordinances granting additional rights of way, as follows: Beginning at the intersection of Luttrell Street with the south corporation line of North Knoxville, northwardly on Luttrell to Wells, westwardly on Wells to Broad, northwardly on Broad to the north corporation line; also on south side of Pearson Avenue, from its intersection with Broad to the entrance to Turner Park; also beginning at the intersection of Central Avenue and Munson Street, westwardly over Munson to Jacksboro, southwardly on Jacksboro 'Street to the south corporation line of North Knoxville.

It .was further provided that the company should begin work on the Central Avenue, Munson Street and Jacksboro line within two weeks, and complete the tracks from the south corporation line on Jacksboro Street by Jacksboro to Munson, by Munson to Central Avenue, thence on Central Avenue to the north corporation line, before February 1, 1896, and should complete the Luttrell, Wells and Broad Street line on or before August 1, 1896, and that the $1,000 check should be forfeited if the Jacksboro, Munson Street and Central Avenue line was not completed as provided, and the road and equipment were to be held as security for its completion and

operation by April 1, 1896, and should then be forfeited for noncompliance and noncompletion, and a like provision was made as to the Luttrell, Wells and Broad Street lines. It was further provided, however, that any time lost by litigation or unavoidable delay preventing the construction and operation of the road in North Knoxville should not be counted as a part of the time limited for its completion. Another ordinance was passed same day, referring specifically to the litigation with Africa, trustee, and providing that any delay caused thereby should not be counted as to that portion of the railway lines between the Southern Railway depot and line between Knoxville and North Knoxville. Five days before this ordinance was passed the Citizens' Street Railway Company laid a short piece of track on the south side of Depot Street four feet from the track of Africa, trustee. This is all the track laid on Depot Street, except such as was laid March 7, 1897. And also two short pieces of track on Jacksboro Street, also on Williams Street adjoining North Gay, and on North Gay adjoining Central Market, and on North Broad Street across First Creek at Peter's Mill. That company has, however, laid its entire track on Jacksboro Street from Depot to Munson, on Munson Street and Central Avenue in North Knoxville, making a continuous line from Depot Street, in Knoxville, to within about six hundred feet of the north corporation line

of North Knoxville, and had completed the same, except overhead wires, at a cost of $10,000.

Efforts were made in October, 1896, by the Citizens' Street Railway Company to have the track of Africa, trustee, removed by the city from its right of way, which was refused. It also attempted to build on Depot Street, but was prevented by the city, and on October 30, 1896, an ordinance was passed by the city repealing all permits previously granted the Citizens' Street Railway Company.

In December, 1896, the city passed ordinances granting Africa, trustee, rights of way over the streets on which he had placed obstructive tracks, and the original bill in this cause was filed. The first and most important question that arises in the case is as to the right of the Citizens' Railway Company to deviate or deflect from the route laid down in its charter, and to what extent the city, by its ordinance, can authorize such deviation.

The charter of the street railway company is in the form prescribed by the Acts of 1875, Chapter 142, and incorporates the Citizens' Railroad Company for the purpose of constructing street railroads in the incorporated cities of Knoxville and North Knoxville, commencing: "(1) At the corner of Gay and Main Streets, in the city of Knoxville; thence," etc. The charter then provides for a second route, beginning at the corner of Clinch and Gay Streets. A third route is then provided for, beginning at the corner of Jackson and Central Avenue. A fourth

route begins at the corner of Park and Gay Streets, the fifth route at the corner of State and Church Streets, each route being traced and defined by streets, avenues, etc., and the charter concludes with the general provision, "With the further right to build extensions from any of the' lines of the company on and along any other streets in Knoxville, West Knoxville, and North Knoxville, to which the municipal authorities of said incorporated towns may consent, and also to extend into the country over roads and streets."

This charter was completed by complying with all the requirements of the statutes on August 17, 1895, and August 20,. 1895, the city gave to the company the right to build and operate its lines along various streets named in the ordinance, which was afterwards amended as before stated.

The Court of Chancery Appeals, in determining the rights of the Citizens' Street Railway Company, discussed the meaning of, certain terms used in its charter, and concluded that, by the terms "initial terminus" and "final terminus," is meant that there must be a definite beginning point and a definite ending point, fixed by the charter, and that each line must be distinct in respect of its terminus and general route; that new routes with new termini may not be constructed by the grantee, at any time, out of a combination of several routes called for in the charter; that, by the term "general route," is meant a general designation or description of a "definite

route " by streets, avenues, roads, etc., and not a route pursuing a general direction, and thus connecting two termini; that this, however, does not prevent several different, alternative, definite routes between the same termini, these alternative routes being intended to accommodate the city and company, and leave them to select between them as they may deem best, either the one or the other. Comparing the provisions of the charter and the ordinance thereunder, the Court of Chancery Appeals finds and reports as facts, that, as to route No. 1, it is divided into two parts—the initial terminus of the first is the corner of Gay and Main Streets, and the route is then northwardly along Gay Street to Park Street, thence eastwardly on Park Street to Magnolia Avenue, thence eastwardly on Magnolia Avenue to Lake Ottosee. That Court reports that neither of the city ordinances gave consent to this line as thus stated. The second part of No. 1 is, " beginning at the corner of Gay and Main Streets, thence eastwardly on Main Street to Prince, thence northwardly on Prince Street to Market Square, eastwardly on Union Street to Clinch Street, to Gay Street, northwardly on Gay Street to Park, eastwardly on Park Street to Magnolia Avenue, and thence on Magnolia Avenue to Lake Ottosee." That Court reports that there is no city ordinance giving consent to this line. Route No. 2 of the charter " begins at the corner of Clinch and Gay Streets, thence eastwardly on Clinch Street to State Street, then northwardly on State

Street to *Jackson Street, thence eastwardly on Jackson Street* to Central Avenue, thence northwardly on Central Avenue to corporate limits of North Knoxville; also from the corner of Central Avenue and Jackson Street southwardly on Central Avenue to the Tennessee River.''

The Court of Chancery Appeals reports that the ordinance follows the streets named in the charter until a call is reached, '' thence northwardly on State Street,'' but omits the next two calls, italicized above, on Jackson Street, and substitutes therefor, after State Street, the following: '' to the northern terminus, and on Vine Street from State Street to '' Central Avenue, thus substituting Vine for Jackson Street.

That Court reports that the course by the substitute street is in the same general direction pursued by the street called for in the charter, but that the substitution by the ordinance of a street different from the one called for in the charter is a material variance.

Route No. 3 of the charter *begins at the corner of Jackson and Central Avenue,* then westwardly along Jackson Street to Broad Street, thence via Oak Street viaduct or bridge to Oak Street, thence westwardly along Oak Street *to Arthur Street, thence on Arthur Street northwardly to Boyd Street,* thence on Boyd Street to *Moses Street, thence on Moses Street* to Clinton Street, thence on Clinton Street to the Knoxville College.

The Court of Chancery Appeals finds that the ordinance left out the beginning point, above italicized, and substituted therefor the following: "Beginning at the corner of Gay and Jackson Streets," and from this point the calls are the same down to the words "along Oak Street." At this point Arthur Street is left out, and two other streets are substituted, as follows: "to Clark Street, thence on Clark Street northwardly to McGhee Street, thence on McGhee Street to Boyd Street." The next charter call is also omitted, leaving out Moses Street, and substituting therefor University Avenue. The Court reports that these substituted streets are in the same general direction, going towards the final terminus, with those left out, but the variance is material.

The ordinance gives another initial point as follows: "Beginning at the corner of Wall and Gay Steets; thence on Wall Street to Prince Street; thence north on Prince Street to Vine Street; thence on Vine Street to Broad Street."

There is nothing of this in the charter, and the variance is material, and the substitution of different initial beginning or terminal points is material. The charter streets left out of the ordinance are shown by italicized lines:

No. 4 charter route begins at the corner of Park and Gay Streets; *thence on Gay Street to Fifth Avenue; thence westwardly on Fifth Avenue to Jacksboro Street; thence northwardly on Jacksboro Street to*

*Munson Street; thence eastwardly on Munson Street to Lea Street; thence northwardly on Lea Street* to the corporation line, then by an available route to the repair shops of the Southern Railroad Company. The following are the streets left out of the ordinance, to wit: Gay Street to Fifth Avenue, and Fifth Avenue to Jacksboro Street, and Munson and Lea Streets.

In lieu of these, the ordinance substituted the following immediately after the initial terminus, viz.: "Thence west from Park Street to Broad Street; thence south on Broad Street to Depot Street; thence northwardly on Depot Street to Jacksboro Street to the north corporation line of Knoxville; also beginning at the intersection of Broad Street and Depot Street; thence east on Depot Street to Gay Street, and to a connection with the existing line of the Rapid Transit Company on Gay Street."

The Court of Chancery Appeals reports the general direction in the main between the charter and ordinance routes to be the same, but the variances in the routes to be material, and that as to the last claim above set out, the general direction is not the same. These latter calls double back from a point on the new line above given in the ordinance, and run eastwardly on Depot Street to Gay Street; thence northwardly on Gay Street to the intersection of Gay and Park Streets.

No. 5 of the charter routes is as follows: "Beginning at the corner of Church and State Streets,

then south on State Street to Hill Street, thence eastwardly across Hill Street viaduct or bridge to Craig Street, thence on Craig Street to Swan Street, thence northwardly on Swan Street to Main Street, thence northwardly on Main Street to Mabry Street.'' The ordinance changes the initial point from the corner of State and Church Streets to the corner of State and Clinch Streets, and the Court reports this a material variation. From the corner of State and Clinch Streets onward the calls are the same, with the following exceptions: In the ordinance is added ''also from the corner of Church and Main Streets westwardly on Church Street to Prince Street, and on Prince Street to Clinch Street, and on Clinch Street to east line of Gay Street.'' There is nothing in the charter to correspond with this.

These are all the calls of the streets contained in the charter, but there are certain routes in the ordinances for which there are no corresponding calls whatever in the charter. As found by the Court of Chancery Appeals, these are as follows: '' Beginning at the corner of Luttrell and Park Streets, thence north on Luttrell Street to the north corporation line of Knoxville; '' and again: '' Beginning at the corner of Luttrell Street and Fourth Avenue, thence west on Central Avenue, thence west on the south side of Central Market to North Gay Street, thence on North Gay Street south to William Street, thence on William Street south to Park Street.'' The Court of Chancery Appeals report these several

variances as material, and accompany their findings with a map of the city, showing the deviations and differences. In the main, its findings and conclusions agree with those of the Chancellor.

We think it clear that the railway company can accept only such grants from the city as the charter provides, and the city can grant no franchise on any street except such as is authorized by charter. The right of the company depends, in the first instance, on the powers conferred on it by the charter; in the second instance on the consent and authority given by the city in conformity to the charter. Rights, under the charter, are inoperative until the approval and consent of the city is obtained. That approval and consent can only be granted in conformity to the provisions of the charter, and in accord with its terms. A charter right without an ordinance applying it, is inoperative; an ordinance not based upon and conforming to the charter is void. Franchises granted to commercial or street railways must emanate from the State, and they depend for their validity upon the provisions of the charter granting them. *Railroad Co.* v. *Adams*, 3 Head, 597; *Railroad Co.* v. *Memphis*, 4 Cold., 406; *Railroad* v. *Bingham*, 3 Pickle, 522; *Mayor and Aldermen* v. *Africa*, 77 Fed. Rep., 507; Elliott on Roads, p. 562. When the route is fixed by charter, the company must build upon it as fixed. Elliott on Roads, p. 572; 19 Am. & Eng. Enc. L., 826, 829; 23 Am. & Eng. Enc. L., 981; 1 Red-

field on Railways, 411, 412; Booth on Street Railways, Secs. 55, 56. A grant by ordinance alone is void. *M. & A.* v. *Africa*, 77 Fed. Rep., 507.

The Court of Chancery Appeals, in its summary of findings, reports that the rights claimed by the Citizens' Street Railway Company are based not upon the lines laid down in the charter, but on fragments of the several lines there provided for, pieced out and connected here and there, by city ordinances undertaking to authorize the use of streets not mentioned in the charter. It is a well established rule of law that a charter must be strictly construed against the grantee. *People* v. *Newton*, 3 L. R. A., 174, and note. If, in one case, a material deviation in routes is allowed, a similar rule must apply in other cases, and the rights of railroad companies will be made to depend, not upon the terms of the charter, but on the facts of each case and the sound discretion of the Court. We are of opinion a different rule prevails in cases of commercial and street railway lines as to the location of their lines and routes. There is a significant difference in the provisions of the charters of the different kinds of road. In the incorporation of a street railroad the charter form names the two termini and the general route of the road. Code (M. & V.), § 1920; Shannon, § 2392. The charter of a commercial railroad provides a line of location "from ———, in the county of ———, to ———, in the county of ———," the term "general route" not being used. Code (M. &

V.), § 1891; Shannon, § 2412.    From their very nature
a different rule must be applied to the different
systems.    A commercial railroad is constructed over
longer distances, where available locations must be
sought in order to obtain proper grades, and the
topography of the country must necessarily be a
feature of great importance in locating the line.  In
such roads large discretion and choice is given in
fixing the line between the termini.

But in case of street railways, grades are gen-
erally already established, and the route must nec-
essarily conform to the streets as laid out, and not
to a mere direction.    In addition, the city authori-
ties determine on what parts of the street the tracks
must be laid.    The general route through a city
cannot, therefore, be designated by direction or the
points of the compass, but by naming the streets
over which it must pass.    The direction is already
fixed by the location of the streets, and the naming
of streets to be passed over is a statement of the
general route, while the specific location on the street
is left to the action of the authorities.

The authorities cited and relied upon, so far as
they are based upon the rights of commercial rail-
ways, are not in point and convincing in cases where
street railroads are involved.    It is argued that a
slight deviation from a charter route is admissible,
and especially is this so as to such deviation be-
tween two termini from a general route laid down
in the charter, the purpose being to overcome an

unlawful and malicious obstruction. In support of this proposition, we are cited to 2 Foote's Law of Incorporation, p. 1632; *Simms* v. *The Street Railway Co.*, 37 Ohio St., 556; *Somner* v. *Cincinnati*, 8 Am. Law Reg., 612; *Ricketts* v. *Birmingham Street Railway Co.*, 85 Ala., 600.

We have been furnished with the case of *Simms* v. *Street Railway Co.*, 37 Ohio St., 556, which appears to be the leading case and most relied upon by the Citizens' Railway Company, and have examined it with care. The question in that case was not one of deviation or deflection, but one of extension, and was controlled by the special provisions of an Act passed May 7, 1869, by the State of Ohio, applicable to all street railroads. Previous to that time the matter of routes for street railroads had been regulated by the Act of 1866, which prescribed that the charter of a street railroad company must specify the name of the company, the name of the street, alley, or avenue, with a description of the locality thereon of each terminus, and the names of the streets, alleys, or avenues, or other public grounds, through which such road shall pass.

It was held that under this Act of 1866 the council could not permit an extension, but only the use of the streets named. The Act of 1869 provided that a council might, by ordinance, grant permission to any person or company owning or having the right to construct any street railroad, to extend its track on any street or streets when the

council might deem such extension beneficial to the public. The Court held that this Act only applied to extensions beyond the termini of a line already provided for, and not within the termini of such a line. It need hardly be added that this case is not in point, the matter here involved not being an extension, but a deflection and deviation. Upon the question of conformity between termini it is entirely in accord with our holding that the specific streets mentioned in the general route control that route.

The case of *Sommers* v. *Cincinnati*, 8 Am. Law Reg., 612, is a case coming under the same statute, and merely holds that the Council may designate two or more streets on which an extension would be beneficial to the public, and leave it to the company to choose between them.

We have not access to the case of *Ricketts* v. *Birmingham Street Ry. Co.*, 85 Ala., 600, but from the extract relied on by counsel it seems that the only material matter in that case was that "municipal consent to a company duly incorporated gives the company only the right to a line between the termini mentioned in the charter, and that the choice of routes between the terminal points is with the city." But in this case the railway company saw proper to have its route designated in its charter by streets, which, under our law, it had a right to do, if, indeed, it were not required to do, and in such case, having chosen its route and located its line in its charter by naming the streets, it is bound to con-

form to it. 19 Am. & Eng. Enc. L., 326, 327, 329, and notes.

It is true it has been held that a slight deflection may be allowed. As to what is meant by a slight deflection, such as will be allowed, is illustrated in 23 Am. & Eng. Enc. L., 982, notes, where there was a slight deviation from the center of the street, in order to reach the company's own property, but it was held that such term, "slight deflection," would not authorize a departure from the route and an entry upon another street.

But it is said that by the act of 1885 (Ex. Ses.), Ch. 18, Subsec. 29, incorporating the city of Knoxville, it is provided that the Board of Mayor and Aldermen shall have the power, by ordinance, to grant the right of way through the streets, avenues and squares of the city for the purpose of street or other railroads and for such other purposes as the Board of Aldermen may provide by ordinance, provided that the Board of Aldermen shall not grant the exclusive right to the use of streets for any purpose to any one person, company or corporation, and the argument is made that under this general act power is conferred upon the city to grant franchises and rights of way upon any of its streets, and that the charter of the Citizens' Railway Company gives it the right to build extensions from any of the lines of said company on and along any other street in Knoxville, West Knoxville and North Knoxville, to which the municipal authorities of said towns may consent, and

also to extend into the country over roads and streets. The contention is that these acts confer upon Knoxville the general power to grant rights of way over any of its streets or alleys to a street railroad company.

If this contention is correct, much that has been said is incorrect, and cannot be sustained. If it is correct, it is not necessary that a charter for a street railroad company in Knoxville should designate any termini or any definite or general route. The only thing necessary is that a charter be obtained for a street railroad, naming Knoxville as its situs, and then the ordinances of the city of Knoxville can confer all the power necessary to locate the lines and establish the routes. Can such a contention be maintained? If so, Knoxville is exceptionally favored, as there is no general statute conferring like powers upon other cities and towns in the State. Evidently the complainants did not so construe the law, or it would never have designated any termini, general route, definite line or street, but would have relied upon the city authorities to determine all these matters.

Even if we grant that this is a correct construction of the law, the complainant having taken out a charter for a route, specifying termini, route, and streets, could not abandon the rights conferred by the charter, and seek other rights under a general law. When it applied for its charter it had the option to ask for franchises over every street in the

16 P—4

city. Having exercised its option and selected its route, it can have no other.

It is not the proper construction of this Act to hold that the Legislature intended to give to Knoxville other and greater rights upon a general subject than was conferred by law upon the other cities of the State, but this Act was merely conferring upon and recognizing in Knoxville the same powers conferred by law upon other cities, to grant rights of way for street railroad purposes—that is, by ordinance to consent to the occupation of its streets by railroads, in accordance with the general law applicable to all cities and towns. As to the emergency clause in the statute, it cannot be applied except according to its terms—that is, to extensions from the lines of the company on or along any other street, etc. This cannot be held to apply to deviations and departures from the charter route. In this connection we are again referred to the case of *Sims* v. *Street Railway Co.*, 37 Ohio St., 569, 570. In that case there was a provision for extensions similar to the one in the present case. But this provision was not in the charter of the special road, but was contained in a general statute applying to all cities and incorporated towns in Ohio. It was held, under that statute, that such extension clause did not give any permission for deviation or extensions within the termini named in the charter. We need not consider the question whether this extension provision is valid and constitutional, as it is not in-

volved in this case. The controversy is not one over extensions, but deviations. We think, however, the true rule is laid down in *Mayor and Aldermen* v. *Africa*, 77 Fed. Rep., 507, that the charter and ordinance must conform, in order to give a valid grant upon any street of the city. Such grant cannot be conferred by ordinance alone, and, if conferred by charter, is inoperative until assented to by ordinance. What the rule may be when the street car company has already occupied the street and built its road thereon, and expended its money in such construction, and established its plant with the city's assent, we are not called upon to decide, as that question is not presented in the record; but, in this case, the city has, by ordinance, revoked its consent before the construction of the lines.

Applying the rule thus laid down to the facts of this case as found by the Court of Chancery Appeals, we readily come to the conclusion that there is such material variance between the several charter routes and the corresponding ordinance routes as must be fatal to the claim of the Citizens' Railway Company. We think we need not further refer to the different routes, except as to three of them, as upon the others there are more patent and obvious deviations and deflections than upon these.

As to Central Avenue, it appears that this route is covered both by the charter and ordinance from the Tennessee River to the north corporation line. But this is not a separate and independent line be-

tween these two termini. On the contrary, the south terminus of each route that runs over Central Avenue is at the corner of Clinch and Gay Streets, and, in order to reach Central Avenue from this terminus, the charter provides to run over Jackson, while the ordinance provides to run over Vine Street. This is a material deviation—the substitution of one street for another—which, under the authorities, cannot be done. Inasmuch as Central Avenue cannot be reached except over this deflective route, it cannot be validated because the charter and ordinance routes conform after the avenue is reached.

As to the Gay Street route, the charter and ordinance routes conform along Gay Street from the corner of Main Street to the corner of Depot Street, but the two termini north and south, are different. The north terminus, under the charter, is the corner of Main and Gay Streets, while, under the ordinance, it is State and Hill Streets, and there is no charter route between these two points. Likewise, at the northern end the charter terminus is Lake Ottosee, while the ordinance terminus is Depot Street, where connection is intended to be made with the Rapid Transit line. We think, therefore, these three routes must fail also.

Under the view we have taken of the matter, we need not consider the question of obstruction and interference by Africa, trustee, or the city, nor forfeiture by lapse of time.

A suit is pending between the Citizens' Street

Railway Company and the city of North Knoxville, involving the rights of the railway company over the streets of that city, but the city of North Knoxville is not a party to this action.

We are of opinion the city is entitled to the relief granted it by the Court of Chancery Appeals; that the Citizens' Railway Company is not entitled to the relief prayed, and the decree of the Court of Chancery Appeals is affirmed.

OPINION ON PETITION TO REHEAR.

WILKES, J. In these consolidated causes, a petition to rehear is presented, based upon the contention that the pleadings are not broad enough to justify and warrant the relief granted by the Court to the city. This insistence was made upon the original hearing, and duly considered by the Court, but not referred to in the written opinion because of its great length, and because the position taken was deemed by the Court not sustained, and of only secondary importance. We can only give a short resume of the pleadings to show that the questions decided were involved in the pleadings. That they were so considered, is apparent from the fact that the contest was fully made along the lines of variance indicated, as well as along the lines of forfeiture because of failure to build within certain

dates, which it is now insisted was really the only question properly involved.

The original bill of the Citizens' Railway, Company sets out the charter routes and the ordinance routes in detail, and avers distinctly its right to build along all of said routes. Copies of the ordinance and a map of the city are filed, which present the variance between the routes, and the prayer is that the Chief of Police and Board of Public Works be enjoined from interfering with the railway company in the construction of its lines on any of the streets set out in the ordinances. It is true the Board of Mayor and Aldermen were not made parties originally to this bill, but the Chief of Police and Board of Public Works were made parties and represented the city government. The injunction against them, which was granted, operated as an injunction against the city government.

The answer filed by the Chief of Police and Board of Public Works presents squarely the contention that the railway company had no rights upon any street, when the joint authority of the charter and ordinance were not given and did not conform the one to the other, besides setting up the matter of forfeiture by failing to build in time.

The city made itself a formal party to this litigation to defend the same, and the different bills were consolidated, and, in the original and amended bill of the city, it was averred that the railway company had no rights over the streets by the ordi-

nances of August 20 and November 25, 1895; and it was further averred that the railway company could occupy no streets not covered by its charter, and that parts of the streets were not covered by the charter, and the prayer is that the railway company be enjoined from doing any work whatever upon the streets until further order of the Court, and under ordinances to be thereafter passed by the city. The question was then fully presented to this Court upon both the lines—that is, of variance between routes and forfeiture by failing to build—and the entire matter was treated in issue, and was in issue, under the pleadings, and fully debated, contested, and considered. This Court did not deem it necessary to consider the question of forfeiture, as that of variance was necessarily fatal to the railway company.

It is also again urged upon the Court that the rights of the Citizens' Railway Company upon the Gay Street line and the Central Avenue line should be recognized. These lines were specially considered upon the original hearing, and specially written upon, showing the grounds upon which the Court held the grants invalid upon those lines, and we can add nothing to what has already been said as to them. The defects in these lines were pointed out to be not alone deviations between the charter and ordinances, but also differences in termini as fixed by the charter and ordinances.

The petition to rehear is dismissed.