### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

## JACKSON, APRIL TERM, 1917.

MEMPHIS STREET RY. CO. *v.* RAPID TRANSIT CO. *et al.*

## (*Jackson.* April Term, 1917.)

1. **MUNICIPAL CORPORATIONS.** Operation of jitneys. Authority.

The authority of defendants to operate jitneys for the transportation of passengers over the city streets, under Pub. Acts 1915, chapter 60 (Thomp. Shan. Code, section 3076A8 *et seq.*) must be by law, authority by color being insufficient. (*Post, pp.* 598, 599.)

Acts cited and construed: Acts 1915, ch. 60.

Case cited and approved: Memphis Street R. Co. v. Rapid Transit Co., 133 Tenn., 99.

Code cited and construed: Sec. 3076a8 (T.-S.).

2. **MUNICIPAL CORPORATIONS.** Operation of jitneys. Authority.

The franchise to defendants to operate jitneys on the city streets can exist only if there be in existence a creating ordinance. (*Post, pp.* 598, 599.)

3. **MUNICIPAL CORPORATIONS.** Ordinance. Compliance with charter.

An ordinance can exist only in event the ordaining power has complied with essential requirements embodied in the charter of the city. (*Post, p.* 599.)

11 Thompson]                    (594)

Memphis St. Ry. Co. v. Rapid Transit Co.

Case cited and approved: Citizens' Street R. Co. v. Africa, 100 Tenn., 26.

4. **MUNICIPAL CORPORATIONS.** Operation of jitneys. Invalid ordinance.

If the ordinance under which defendants were given a franchise to operate jitneys was invalid because not signed by the mayor, this court is not precluded from so declaring at the instance of complainants, having a valid franchise for the operation of street cars; the State not being the only party which can call in question the existence or validity or defendants' franchise in such case. (*Post, pp.* 599-608.)

Cases cited and approved:    People v. General Electric Ry. Co., 172 Ill., 129; Tulsa Street R. Co. v. Oklahoma Union Traction Co., 27 Okla., 339; Bartlesville Electric, etc., Co. v. Bartlesville Interurban Railway Co., 26 Okla., 453; Jersey City Gas Co. v. Dwight, 29 N. J. Eq., 242; Millville Gaslight Co. v. Vineland L. & P. Co., 72 N. J. Eq., 305; Market R. Co. v. Central R. Co., 51 Cal., 583; Coffeyville Min. & Gas Co. v. Citizens' Natural Gas and Min. Co., 55 Kan., 173; Baxter Tel. Co. v. Cherokee, etc., Tel. Ass'n., 94 Kan., 159; Geneva-Seneca Electric Co. v. Economic Power & Construction Co., 136 App. Div., 219; Market St. Ry. Co. v. Cen. Ry. Co., 51 Cal., 583.

Cases cited and distinguished: General Electric R. Co. v. Chicago, etc., R. Co., 98 Fed., 907; Atlanta R., etc., Co. v. Atlanta Rapid Transit Co., 113 Ga., 481; L. & N. R. Co. v. Mobile, etc., Co. 124 Ala., 162; Memphis St. Ry. Co. v. Rapid Transit Co., 133 Tenn., 99; Patton v. Chattanooga, 108 Tenn., 220; Allen v. Clausen, 114 Wis., 244.

Chattanooga, 108 Tenn., 220; Allen v. Clausen, 114 Wis., 244.

5. **MUNICIPAL CORPORATIONS.** Ordinances. Signing by mayor. Necessity.

Under Acts 1909, chapter 298, section 40, providing that the method of granting franchises shall remain as prescribed by Acts 1905, chapter 54, section 29, etc., *held* that, notwithstanding the failure to mention section 28 of chapter 54, section 29 remained in the same full force, and that the signature of the mayor was a pre-

requisite to the effectiveness of an ordinance granting defendants the right to operate jitneys. (*Post, pp.* 608-612.)

Acts cited and construed: Acts 1905, ch. 54, sec. 29; Acts 1909, ch. 298, sec. 40.

Case cited and approved: Memphis St. R. Co. v. Memphis, 44 Tenn., 406.

FROM SHELBY

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—F. H. HEISKELL and FRANCIS FENTRESS, Chancellors.

WRIGHT, MILES, WARING & WALKER, for complainant.

BELL, TERRY & BELL, BROWN & ANDERSON and GATES & MARTIN, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by the Memphis Street Railway Company to enjoin the Rapid Transit Company and the other corporate defendants from operating their vehicles, commonly called jitneys, on certain of the streets of Memphis, under conditions alleged showing and charging their operation to be a public nuisance.

Complainant alleged its ownership of a valid franchise and its operation thereunder of cars on the streets

for street railway purposes; that it was the largest taxpayer in the city; that the operation of the jitney busses was to afford a service similar to that ordinarily furnished by complainant, thus competing for the passenger traffic over the same routes: that the defendants would inflict a special injury on and damage to complainant in the above manner; also in the wear of the street paving which complainant had been required to put down along the routes by the terms of its own franchise, and in blocking or embarrassing and rendering more dangerous the operation of complainant's cars; and, further, that the special damage to it would be irreparable.

It was alleged that the operation of jitneys by defendants was under a claim to franchises which were nonexistent, because the ordinances therefor had not been signed in approval by the mayor of the city, and that the franchises were invalid for numerous reasons, not necessary to be mentioned.

The defendants answered, denying that the ordinances were required to be signed, and putting at issue the other allegations.

The cause was heard by Chancellors Heiskell and Fentress who held that the ordinances were invalid because not signed by the mayor, and a perpetual injunction was awarded.

Upon appeal the court of civil appeals affirmed the decree of the chancery court; and the defendants have filed a petition for *certiorari* in order to a review by

this court, and the cause has been elaborately argued before us.

A litigation between the Memphis Street Railway Company and the Rapid Transit Company and others was disposed of by this court in 1915, in an opinion reported under the name and style of *Memphis Street R. Co.* v. *Rapid Transit,* 133 Tenn., 99, 179 S. W., 635, L. R. A., 1916B, 1143, Ann. Cas., 1917C, 1045, in which opinion the contents of the bill of complaint, quite similar to the present one, are more elaborately outlined. At that time, however, the transit company had, and claimed to have, no franchise from the city. Following the termination of that litigation, it and the other defendants applied for and claim to have secured franchises; and, when they attempted to operate thereunder, the present suit was commenced.

The legislative act (Acts 1915, 60, Thomp. Shan. Code, section 3076A8 *et seq*), is set out in full in the former opinion. It authorizes incorporated cities to grant licenses to carriers, not operating on fixed tracks, etc., to operate over streets, upon terms and conditions prescribed in the act.

In the former opinion it was held that an injunction would lie at the instance of a street railway company possessed of a valid franchise, inhibiting defendants, who were operating without authority of law, upon complainant showing special damages to itself.

The first proposition presented by appellants for reversal of the decree is that, since each of them now holds what is claimed to be a franchise, or what they

refer to as being, in any event, "color of authority," the existence or validity thereof may not be inquired into at the instance of complainant; that only the State through its designated law officer may question their attempted exercise of the granted, or purportedly granted, powers, or question whether the defendants have "authority of law" to conduct their business. We are not prepared to give recognition to the doctrine of authority by color. Authority must be by the law. The franchise involved here can exist only if there be in existence a creating ordinance.

The ordinance can exist only in event the ordaining power has complied with essential requirements embodied in the charter of the city, its fundamental law. A franchise such as that claimed by appellants, must emanate from the State, and the legislative mandate respecting its grant must be complied with. *Citizens' Street R. Co.* v. *Africa,* 100 Tenn., 26, 43, 42 S. W., 485, 878, and cases cited.

If in fact the ordinance does not exist and the franchise be but tissue paper, are we precluded from so declaring at the instance of any person, individual or corporate, who will be specially damaged by reason of the exercise of powers claimed under it? We reply in the negative. If the paper be blank we hold that we may decline to see color of any sort in it.

The courts of a few of the States have, to an extent at least, held with the contention of appellant; notably the supreme court of Illinois.

In *General Electric R. Co.* v. *Chicago, etc., R. Co.* 98 Fed., 907, 39 C. C. A., 345, 58 L. R. A., 231, an injunction was sought by the Chicago Company against the General Company, forbidding it to enter upon Fourteenth street in Chicago for the purpose of constructing thereon a street railway, on the ground that there would be an interference with the complainant's access to its freight house and with its use of its tracks on the street, and cause special and irreparable injury, for which there was no adequate remedy at law. The complainant attacked the validity of an ordinance, under which the General Company was proceeding, because passed without the requisite petition of the owners of one-half the abutting properties. The court, adverting to the claim that the decisions of the State courts of Illinois were adverse to complainant's right to sue, said:

"Any suggestion that one so threatened may seek aid through the attorney-general, besides being in itself impracticable, is foreclosed by the decision of the supreme court of the State that a suit prosecuted by the attorney general for private or individual benefit should be dismissed on that ground. *People* v. *George Electric Ry. Co.,* 172 Ill., 129, 50 N. E., 158. If, therefore the resort of the individual to equity for relief against an irreparable wrong is forbidden in such cases, then there is no remedy whatever beyond what may be recovered in an action at law, confessedly inadequate in any event, and in supposable cases of insolvent or otherwise irresponsible defendants totally unavailing.

"The contention that the ordinance partakes of the nature of an adjudication, and therefore its validity cannot be denied in such a suit, is only another way of asserting the inadmissible proposition that the injured party shall have no means of relief. The citations in favor of the proposition do not support it, and the precedents to the contrary, as well as the necessity for just and convenient, not to say possible, modes of procedure, warrant its rejection."

In *Atlanta R., etc., Co.* v. *Atlanta Rapid Transit Co.*, 113 Ga., 481, 39 S. E., 12, it appeared that the ordinance relied upon by defendant was challenged and asked to be denounced as void because of an alleged defect or irregularity in its passage, the claim being that the meeting of the aldermanic board at which it was finally passed was not a regular meeting of that body. The court conceived that the ordinance could be tested in the suit of the old company. It was said:

"The main question to be determined is whether the ordinance which granted to the transit company the rights and powers named therein is a valid and legal ordinance of the city of Atlanta; for, from its validity or invalidity, it must be determined whether the city of Atlanta has given its consent that the transit company should occupy the streets named in the ordinance with a line of railway."

In *L. & N. R. Co.* v. *Mobile, etc., Co.*, 124 Ala., 162, 26 South., 895, it was said, notwithstanding there had been granted what purported to be a franchise:

"It is contended by the defendant that the building and operating of its proposed railroad upon and along said Water street would not be an unauthorized obstruction of that street. This contention must rest, of course, upon the validity of the city ordinance of October 8, 1895, granting the right to the defendant company to build its track and operate its trains over said street. The validity of this ordinance must depend upon the powers and authority conferred upon the city under its charter to make the grant in question."

The court then quoted the charter, and held that the ordinance of the city under which the defendant claimed its franchise was null and void.

In *Tulsa Street R. Co. v. Oklahoma Union Traction Co.*, 27 Okla., 339, 113 Pac., 180, the supreme court of Oklahoma discussed whether it would apply the rule previously announced by it in *Bartlesville Electric, etc., Co.*, v. *Bartlesville Interurban Railway Co.*, 26 Okl., 453, 109 Pac., 228, 29 L. R. A. (N. S.), 77, just as we are to determine whether the principles heretofore announced by us in *Memphis Street R. Co. v. Rapid Transit Co.*, supra, are applicable in the instant controversy. The court said:

"Although in a proceeding by the owner of a franchise, authorizing it to use the streets and alleys of a city for certain purposes, to enjoin a company alleged to be using such streets and alleys for a similar purpose, without authority, it is contended by the defendant company that it acts under legislative

authority, the court may investigate the facts and determine whether the defendant company has a franchise, and if it has a pretended franchise, may determine whether such franchise is invalid because granted without authority of law"—citing and quoting from *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq., 242, and other cases.

See, also, *Millville Gaslight Co.* v. *Vineland L. & P. Co.,* 72 N. J. Eq., 305, 65 Atl., 504.

The contention of appellant is rested upon such cases as *Market R. Co.* v. *Central R. Co.,* 51 Cal., 583; *Coffeyville Min. & Gas Co.* v. *Citizens' Natural Gas & Min. Co.,* 55 Kan., 173, 40 Pac., 326, followed by *Baxter Tel. Co.* v. *Cherokee, etc., Tel. Asso.,* 94 Kan., 159, 146 Pac., 324 L. R. A., 1916B, 1083, which proceed upon the notion that the complaint of the older company is to prevent competition with the business conducted by it under its franchise, and accordingly deny the right to injunctive relief.

The text-writers pronounce against the doctrine of the cases so relied upon, preferring that of the decisions quoted from above, at the base of which lies the concept that the franchise (and consequent easement in the streets) of the older company constitutes property which, if it stands to suffer special or peculiar damages, injunction would lie to protect. 4 McQuillin, Mun. Corp. section 1771; Dillon, Mun. Corp. section 1244; 12 R. C. L., p. 190, section 17.

In support of their insistence, appellants' counsel claim to find support in what was said by this court

in regard to the cases which hold to the minority rule, not, however, in any ruling made, but in a passing remark, in *Memphis Street R. Co.* v. *Tapid Transit Co.,* 133 Tenn., 99, 179 S. W., 635, L. R. A., 1916B, 1143, Ann. Cas., 1917C, 1045, as follows:

"As a matter of course the observation just made is only applicable to clear cases, as the case before us. If the franchise or license of a complainant was doubtful, an injunction would not be awarded to protect it, nor could the validity of a license or franchise possessed by a competing defendant. be questioned, and its exercise restrained, in proceedings of this character. *Geneva-Seneca Electric Co.* v. *Economic Power & Construction Co.,* 136 App. Div., 219, 120 N. Y. Supp., 926; *Coffeyville Min. & Gas. Co.* v. *Citizens' Natural Gas & Min. Co.,* 55 Kan., 173, 40 Pac., 326; *Market St. Ry. Co.* v. *Cen. Ry. Co.,* 51 Cal., 583. We are in full accord with the views expressed in these and like cases. Questions upon the regularity of a character, the validity of a franchise, and the like, are to be determined upon suit of attorney-general, or other constituted authority, and not on suit of a competing corporation."

The court was expressly referring to a "franchise possessed" by a competing defendant, and not to a franchise which is without effect to vest any right in the claimant thereof; and what may have been said in the opinion of the cases cited was to approve only so much thereof as had relation to a franchise truly vested in and possessed by the claimant. Forfeiture

of such franchise, or its impeachment for invalidity because of a breach of a condition subsequent, we think, falls within the rule of the minority cases—that a proceeding in the name of the State on authority of the attorney-general is necessary.

The unfairness of imputing anything more to this language is made yet more manifest by the fact that this court had already spoken upon the point now under consideration and in plain terms:

"There is no question as to the jurisdiction of the chancery court to restrain municipal ordinances upon the ground that they are beyond the powers conferred upon the municipality, or that they were not passed regularly or according to the forms of law.

"There is no question that any one who suffers, or will suffer, a special injury, may maintain a suit to test the validity of an ordinance upon either of these grounds, and that such a bill may be maintained by a taxpayer, as such, if the result of the ordinance will be to increase his tax burden." *Patton* v. *Chattanooga*, 108 Tenn., 220, 221, 65 S. W., 414, 420.

Upon the earnest insistence of able counsel, and because of the magnitude of the interests in this State dependent upon its proper solution, we have reinvestigated the question, and with confidence in its justice and soundness reaffirm what was thus said in the case of *Patton* v. *Chattanooga*.

That there is shown a special injury to complainant company was distinctly decided in the former decision as reported in 133 Tenn., 99, 179 S. W. 635, and the

ruling, if challenged in this case, needs only to be reaffirmed.

If an owner of abutting property may, in his own action, call in question the existence or validity of such a franchise, as some of the above-quoted and numerous other cases hold, it is difficult to see why the owner of property in the street may not. As was remarked in the *Tulsa Case,* supra, there can be no difference in remedies to protect property that abuts the street and to protect property that lies in the street. It is an easement that is interfered with in either case; and, on comparison, it would seem that a street railway company, whose tracks or rails are directly obstructed by jitney busses in unlawful operation along and across the right of way, has the plainer case for protection.

It is another contention of appellant company that if there be power in the grantor, State, or municipality to grant at all, and it purports to enact or ordain, though invalidly, then only the State through its appointed officer may call in question the existence or validity of the franchise. It is conceded that the contrary may be true where the State or municipality is without power, wholly or in every event. We believe that the doctrine thus advanced is not sustainable on reason, and that if it has authority in decisions they are few and not well considered. *Geneva-Seneca Electric Co.* v. *Economic P. & C. Co.,* 136 App. Div., 219, 120 N. Y. Supp, 926, is the only case cited on brief which supports the proposition.

In *Allen* v. *Clausen,* 114 Wis., 244, 90 N. W., 181, it appeared that the city of Kenosha had power, under legislative enactment, to grant street railway fran- chises, but only to corporations. The city undertook to grant a franchise to two individuals, by ordinance duly passed, which was accepted. The grantees were required to, and did, execute a bond. An owner of property abutting on a street named in the franchise filed a complaint, alleging irreparable damages to her property, and praying an injunction against the entry upon construction work by the grantees. The court held that the city did not have the power to confer the franchise on any other than a corporate entity author- ied to construct a street railway, and that the court would inquire as to the validity of the ordinance, on complainant's showing. It was said:

"It has, however, never been held that, where one attempts to justify acts by a pretended license or fran- chise which the grantor had no power whatever to confer, a court, whether of law or equity, cannot dis- cover that fact and deny the claim of justification. It matters not whether such defect of power rests upon the State itself or upon any of its subordinate agen- cies attempting its exercise. The readiness of courts so to do has been evinced in many cases in this State and elsewhere."

It is to be observed that in the above case power existed in the municipality to grant a franchise on the street in question, but it was limited or qualified as to the mode of exercise. So it is in the case under review;

power to act, proceeding properly, was not lacking, but the limitations on its exercise were not regarded.

For test, let it be assumed that the Constitution of our State contained a provision permitting the granting of charters and franchises by special legislative acts to corporations; that such an act was passed, but that there were violated other constitutional provisions relating to the manner of passage or approval of acts of that body. Is it to be said that a court must recognize any sort of virtue in the franchise (or *status* claimed to exist because of it), thus granted by a patently void enactment, because the State had power to grant it had its legislative branch proceeded properly? The character of the city of Memphis is its constitution; and a court must, by parity of reasoning, not close its own eyes or permit itself to be hoodwinked, when it comes to probing and discovering the binding force, or the nullity of an ordinance so far as it has relation to property rights that are specially affected to their detriment. We are unable to perceive how an ordinance, if void for one reason, may be more effective than if it were void for a different reason. All nullities are of the same efficiency, or nonefficiency, in law as well as in physics.

We are, then, brought to a consideration of the question whether the ordinances relied upon ever became effective so as to support the asserted franchises.

Chapter 298 of the Acts of 1909, together with certain unrepealed former acts and portions of former

acts of the legislature, constitute the present charter of the city of Memphis.

Sections 28 and 29 of the former city charter (Acts 1905, chapter 54) dealt with the granting of franchises by the city of Memphis. Section 28 provided:

"That the legislative council shall have charge and control of the giving, granting and selling of all franchises, special privileges to individuals, firms or corporations, and no such franchise or privilege shall be bestowed or sold except by a two-thirds vote of the members of each board of the legislative council, nor for any period of time exceeding thirty years, and the approval of the mayor."

Section 29 of that act provided:

"That no franchise shall be granted or sold to any commercial railroad, street railroad, gas company, electric light company, water company or other *quasi*-public corporation, except by ordinance, fully guarding and protecting the rights of the public. Nor shall such ordinance become effective until it is first submitted to and approved by a majority of the citizens voting either at some general or special election . . .; provided, such submission be demanded by petition of at least five hundred freeholders of the city and presented to the legislative council for the passage of said ordinance, or within thirty days thereafter; provided, further, that no . . . . ordinance shall become effective until thirty days after it has passed both boards and been signed by the mayor."

138 Tenn.—39.

The foregoing provisions were in effect under what was known as the bicameral form of city government. The commission form of government was substituted for the bicameral form by chapter 298 of the Acts of 1909. When the legislature came to deal, in that act, with the granting of franchises by the city of Memphis, it inserted section 40 of said chapter, which reads as follows:

"That the method of granting franchises shall remain as prescribed in section 29, chapter 54 of the Acts of 1905, save and except that the ordinance granting such franchise shall be passed by a majority of the board of commissioners; provided, however, that no ordinance granting any franchise shall become effective until such ordinance shall have been passed at three separate regular meetings of the board and shall have been published in some daily newspaper published in Memphis, Tenn., at least three times, each of said publications to be on the day prior to the meeting at which each passage of the ordinance occurs."

The two chancellors and the court of civil appeals were of opinion that under these sections of the charter of the city, the signature of the mayor to an ordinance granting a franchise was requisite to its validity. They reached this conclusion by reasoning that the draftsman of the act of 1909 and the legislature intended to say, "The method of granting franchises shall remain as prescribed in sections 28 and 29," and omitted 28 by inadvertence; that in any event it was the intention to provide that no change should be

made in the mode of the city's granting of franchises provided for in the earlier act of 1905, eycept that the ordinance might be passed by a majority of the board instead of requiring a two-thirds vote, a majority under the commission form of government being itself three-fifths, lacking but one-fifteenth of being two-thirds.

Without passing upon the soundness of this reasoning, which is vigorously assailed by the appellants, we think the correctness of the result reached by the lower courts is demonstrable by reasoning that is less involved.

Both sections 28 and 29 dealt with restrictions in respect of the granting of franchises, and in the first of these it was provided that "the approval of the mayor" of the ordinance was necessary to the vesting of a franchise right in the applicant. Section 29 clearly stipulated that in order to the effectiveness of a franchise ordinance it must be "signed by the mayor." This signature was to be one in approval, to manifest the "approval" that was made a requisite in section 28. These words "signed by the mayor" in the later section, therefore, took color from the words "approval of the mayor" in the preceding section. That meaning, then, was a fixed and abiding quantity; it was indelibly stamped upon section 29, regardless of the after fate of section 28. Therefore, notwithstanding the failure to mention section 28 in chapter 54 of the Act of 1905, section 29, which by reference was retained, remained in the same full force

touching the matter of the mayor's signature in approval. The mayor's signature attesting his approval is yet required in order to the effectiveness of an ordinance which grants a franchise. The legislative intent was to preserve that safeguard so far as such ordinances were concerned.

Such signature is therefore a prerequisite or condition precedent to the effectiveness or validity of any such ordinance. *Memphis Street R. Co.* v. *Memphis,* 4 Cold. (44 Tenn.), 406.

The ordinances never having become effective, the franchise failed. It becomes unnecessary to dispose of the other grounds relied upon by complainant company to show the invalidity of the several franchises.

It results that there is no error in the decree of the court of civil appeals, affirming that of the chancery court. Affirmed.