No. 19,046.

THE BAXTER TELEPHONE COMPANY, *Appellant*, v. THE CHEROKEE COUNTY MUTUAL TELEPHONE ASSOCIATION et al., *Appellees*.

SYLLABUS BY THE COURT.

1. TELEPHONE COMPANY—*Illegal Assumption of Privilege—Can Only be Challenged by the State*. The assumption of a privilege not granted by state authority ordinarily can only be challenged by the state itself in a suit brought by its proper representatives.

2. SAME—*Injunction Not Maintainable by Rival Company*. A telephone company has not that peculiar interest in the establishment of a second telephone company in a competitive field, as distinguished from the general public, so as to authorize it to maintain an injunction suit against its rival because that rival does not hold a license from the public utilities commission under section 31 of chapter 238 of the Laws of 1911.

Appeal from Cherokee district court; EDWARD E. SAPP, judge. Opinion filed February 6, 1915. Affirmed.

*S. C. Westcott*, and *E. B. Morgan*, both of Galena, for the appellant.

*Grant-Waggoner*, of Baxter Springs, and *J. N. Dunbar*, of Columbus, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The Baxter Telephone Company is a Kansas corporation, which for several years past has enjoyed a franchise from the city of Baxter Springs, a city of the second class, in Cherokee county, Kansas. This franchise authorizes it to exercise its corporate rights in the streets and alleys of the municipality, which rights include the maintenance of a telephone exchange and the proper cables, poles, wires and other equipment pertinent to the telephone business. This company was lawfully exercising these privileges prior to the enactment of the public utilities law of 1911, and since its enactment that company has complied with its provisions and has duly and regularly made its report to the public utilities commission.

The Cherokee County Mutual Telephone Association is an unincorporated association of persons and local telephone companies for the mutual exchange of telephone messages in Cherokee county, and to some extent it provides for long-distance connection and toll-line service to points in northern Kansas, and to Missouri and Oklahoma.

Baxter Local No. 121 of The Cherokee County Mutual Telephone Association is a voluntary telephone association of twenty-six persons residing in and about Baxter Springs and is organized for the purpose of giving mutual telephone service to its membership. It contemplates an affiliation with The Cherokee County Mutual Telephone Association upon an understanding that when it is ready and fully equipped for business it may become a member of The Cherokee County Mutual Telephone Association for the interchange and transmission of messages.

On July 3, 1913, the city of Baxter Springs published an ordinance granting a franchise to Baxter Local No. 121, to operate a telephone exchange and to use the streets and alleys of the city for its telephone

business; and pursuant thereto, and without any license under section 31 of chapter 238 of the Laws of 1911, from the public utilities commission, Baxter Local No. 121 set about the establishment of its local exchange and telephone system within the city limits.

Thereupon The Baxter Telephone Company, the established corporation engaged in the telephone business in Baxter Springs, brought suit against The Cherokee County Mutual Telephone Association and Baxter Local No. 121, and certain of the officers and members of those voluntary associations as representatives of their whole memberships, alleging that the plaintiff corporation was serving the public in the city with efficient and sufficient service on reasonable and satisfactory terms, and that it had an investment in the telephone business in Baxter Springs of about $16,000 to $20,000, and that the construction of another exchange in Baxter Springs would cause the plaintiff great and irreparable injury and damage other and different in kind from that suffered by any other person, firm or corporation, by reason of the parallel and intersecting lines of the other associations interfering with the plaintiff's lines and with the construction of future lines of the plaintiff as they would be required; and that the stringing of wires, cables and the setting of poles over the streets and across the lines of the plaintiff would interfere with and impair the high-class service furnished by plaintiff and cause plaintiff an increase in cost of maintenance and a loss of patronage and reduction of revenue.

On the plaintiff's petition, summarized as above, temporary and permanent injunctions were asked against the county and local associations and against a number of officers and members of those associations to restrain them from constructing the proposed telephone system in Baxter Springs.

The district court granted a temporary injunction and the defendants filed a demurrer and a motion to

set aside the temporary injunction. Affidavits, oral testimony and documentary evidence were introduced in support of the motion to dissolve the temporary injunction, and the motion and demurrer were heard and considered together. The motion was allowed and the demurrer was sustained.

From these rulings of the trial court the plaintiff below submits two propositions for our consideration: (*a*) Has The Baxter Telephone Company such a peculiar interest in this matter different from the general public that it may maintain this suit in its own behalf; and if so, (*b*) does the public utilities law require Baxter Local No. 121 of The Cherokee County Mutual Telephone Association to secure a license from the public utilities commission before engaging in business in Baxter Springs?

Ordinarily the usurpation of a corporate privilege or public franchise can only be challenged by an action in the name of the state by its proper officer.

In Kansas that proper officer would be the county attorney. (Gen. Stat. 1909, § 2226; *The State, ex rel. County Attorney, v. Eble,* 77 Kan. 179, 93 Pac. 803.) The attorney-general is likewise frequently called upon to challenge the exercise of some unauthorized corporate power. (*The State, ex rel. Attorney-general, v. Stock Yards Co.,* ante p. 96, 145 Pac. 831; *The State, ex rel. Attorney-general, v. Garfield County,* 54 Kan. 372, 38 Pac. 559.)

The cases of *Houser v. Smith,* 80 Kan. 260, 101 Pac. 1001, and *The State, ex rel. Attorney-general, v. Bentley,* 80 Kan. 227, 101 Pac. 1073, considered together, are instructive. The former, although but briefly reported, was an injunction suit against the county treasurer of Gove county to restrain him from collecting a high-school tax on the ground that "there was and is no high school in said county of Gove which has been established or created according to law." (p. 260.) The plaintiffs were private citizens and were

nonsuited. But a radically different result was obtained when an officer of the state challenged the legality of the organization of the high school. In .the latter case the organization of the high school was declared void.

By the railroad and utilities acts the power is conferred upon the attorney for the public utilities commission to challenge the exercise of unauthorized corporate acts. (Gen. Stat. 1909, § 7182; Laws 1911, ch. 238, §§ 2, 7; *The State, ex rel. Attorney for the Public Utilities Commission, v. Gas Co.*, 88 Kan. 165, 127 Pac. 639.) The latter case is·quite pertinent. There the gas company had received the assent of the city to raise the rates for gas; but it had not received the assent of the public utilities commission. In the case at bar the appellee, Baxter Local No. 121, has received the assent of the city, but that of the state commission is still wanting, if such assent is required. These illustrations show that if there is a usurpation of powers by the appellees, the state has provided itself with officers to challenge such usurpation.

A private plaintiff who is likely to be injured in some special manner or whose situation is peculiarly affected by the exercise of a usurped power could maintain the action, but no such case is presented here.

In *Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173, 40 Pac. 326, it was said:

"A corporation organized for the purpose of supplying a city with natural gas, and authorized by an ordinance passed by the city council to use the streets and public grounds of the city for the purpose of laying its mains and pipes, has no standing in court to test the right of a rival company to use the streets for a similar purpose, or the validity of subsequent ordinances, under which the defendant claims the right to use the streets." (Syl. ¶ 2.)

An especially apt case in this connection is *Amusement Syndicate Co. v. City of Topeka*, 68 Kan. 801, 74 Pac. 606, where the owner of an opera house sought

to enjoin the use of a large public auditorium for public entertainment for profit.   This court said:

"We can not decide the principal questions discussed here, for the reason that the action is brought by one who has no right to challenge and correct the administration of purely public affairs.   The plaintiff is alleged to be a large taxpayer, it is true, but it has been repeatedly held that a private party can not maintain an action against public officers, where the acts complained of affect merely the interests of the public generally.   Before a private party can be allowed to maintain an action to challenge the conduct of public business, he must allege an interest personal and peculiar to himself that is not shared by and which does not affect the general public.   Assuming it to be true that the city is using its building in a manner not warranted by law, it affects the plaintiff only as it does others having halls and buildings in which entertainments may be held.   As was said in *Comm'rs of Barber Co. v. Smith*, 48 Kan. 331, 333, 29 Pac. 565, 'It is not enough that his damages are greater than those sustained by the general public, thus differing only in degree, but they must be different in kind.'

"Plaintiff refers to *Spencer v. School District*, 15 Kan. 259, 22 Am. Rep. 268, where an action by a private person was maintained to enjoin the use of a schoolhouse for other than school purposes; but in that case, which may be termed a border one, the action was maintained because of the destruction of plaintiff's own personal and private property, which was in the schoolhouse, namely, the books, slates, pens, inkstands, etc., that were wasted and destroyed by the misuse of the building.   Here no such reason exists, and the fact that the continuance of the wrong affecting other members of the community interferes with plaintiff's business in a greater degree than with that of the others gives it no right to complain.   If, as has been suggested in the argument, a county having a poor farm should grow thereon more than enough to supply the wants of the inmates and should sell the surplus, it would hardly be contended that every farmer in the county who might be slightly affected by the competition would have a right to institute an action to enjoin the county and its officers from cultivating the farm and selling the surplus products.

"All of the cases, from *Craft v. Jackson County*, 5

Kan. 518, down to the latest decision on the question, argue against the right of plaintiff to maintain this proceeding. In *Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173, 179, 40 Pac. 326, where one company was seeking to prevent another from interfering with its monopoly of gas business, it was said:

" 'A private person or corporation will not be recognized in a court of justice as the guardian of purely public interests, nor to further its private ends by assuming that character.'

"The plaintiff having no right to maintain the action, the judgment of the trial court denying the injunction will be affirmed." (p. 801.)

Under the demurrer all the material allegations of plaintiff's petition must be taken as true, but it does not appear that a mere rival in business has such an interest as will permit it to maintain an action of this character. Assuming for the moment that the business of the Baxter Local No. 121 is of such a character that it would require a license from the public utilities commission before engaging in the telephone business in Baxter Springs, it must be conceded that in the exercise of a sound discretion the public utilities commission might grant that license; and, if it did, its competition for public patronage would be just as keen and it would occupy the streets and diminish and divide the revenue of appellant just as much with a license as without one. Licenses to engage in any trade or calling within the limits of a city are common. Hackmen, draymen, pawnbrokers, and the like are required in most Kansas towns to have licenses issued by the city authorities. But we think the licensees of these callings could hardly maintain an injunction suit against any person who presumed to exercise any such calling without a license; yet the competition of an unlicensed hackman or pawnbroker would tend to lessen the business and diminish the revenues of those lawfully engaged in such business. · Doctors, lawyers, and school teachers require a license or certificate to practice their professions, but none of these could maintain a suit to enjoin another person from engaging in

any of their peculiar professions without such certificate, notwithstanding any probable loss of income on account of the invasion of their professions by unlicensed practitioners. We can see no fundamental difference between the telephone business and any other business, except that owing to its importance and general use one telephone system is likely to be more satisfactory and less expensive than where two or more such companies occupy the same field. This the legislature has recognized and has provided that as a matter of public policy no public utility like a telephone company, excepting one strictly mutual, will be authorized to do business until it has obtained a certificate or a license of authority as a public convenience and necessity within the community where it seeks to do business. This is a part of the state's program for the regulation of public utilities, but the administration of that program and the enforcement of the law pertaining thereto is vested in public officers authorized to use the name of the state to carry it into execution. Prior to the passage of the public utilities act any number of telephone companies which could persuade a city government to grant a franchise for the use of the streets and alleys might establish a telephone system within such city. The competition of these would affect the business and affect the revenues of other utilities of the same character which had previously been established. The enactment of the public utilities law was an extension of the police power of the state over such utilities, but it did not grant any additional rights to such utilities as were established and maintained before the adoption of that act; and the Baxter Telephone Company procured no rights thereunder which it can maintain against possible competitors. The public utilities law was not enacted as an extension or enlargement of the powers and privileges of an existing telephone company.

In view of this it may be unnecessary to determine the question as to whether Baxter Local No. 121 of

The Cherokee County Mutual Telephone Association requires a license from the public utilities commission or not. The evidence shows that it proposes to affiliate with The Cherokee County Mutual Telephone Association for the exchange and transmission of messages and to become a member of that county association, and the evidence shows that the county association does receive and transmit messages for pay from persons who are not members of the individual local telephone associations of that county, and from an inspection of the by-laws it appears clear that the Baxter Local No. 121 intends to conduct its business in harmony with the other local associations which comprise the county association. If so, it will probably not limit its business to that of a strictly mutual character as defined by the public utilities act, and it is doubtful if its plan of organization and management and the operation of its telephone system will be exempt from the control of the public utilities commission. But that matter should await the challenge of the state on the relation of some officer authorized to bring the matter before a tribunal of competent jurisdiction.

We perceive no error in the judgment of the district court of Cherokee county and its decision is affirmed.