# PORTO RICO RAILWAY, LIGHT, & POWER COMPANY
## *v.*
## FELIPE AMADOR ET AL.

San Juan, Equity, No. 1011.

### THE JITNEY FRANCHISE.

Common Carrier—Use of Highway.

1. Anyone may use a public highway without special license. A franchise is a grant of the public power by a person or corporation. A franchise is distinguished from police supervision, which must be exercised over all property and business. A franchise when granted is property.

Porto Rico—Common Law.

2. While the acquisition of Porto Rico by the United States did not affect the civil law in its application to private rights, it did substitute the clear principles of the common law as to all public matters.

Common Carriers—Business in the Street.

3. No private individual can use the streets, sidewalk, or roadway in the prosecution of his business without the consent of the public. A common carrier cannot select a street for the conduct of its business at will.

Common Carrier—Porto Rican Legislation.

4. The Organic Act has conferred supervision of common carriers first upon the Executive Council and then upon the Public Service Commission. The terms of the act of Congress and of local acts do not specifically embrace jitneys, for they were not known, but do

---

NOTE.—The question as to whether person or company operating passenger automobile for hire is a common carrier is discussed in a note in L.R.A.1918F, 468.

Authorities discussing the question of regulation of jitney busses generally are collated in notes in L.R.A.1915F, 840; L.R.A.1916B, 1151; L.R.A. 1918B, 909; and L.R.A.1918F, 475.

Porto Rico Railway, Light, & P. Co. v. Amador.

embrace the full general subject of franchise for public purposes, including highways, and applies to them.

Public Franchise—Attorney General.

5. It is the duty of the Attorney General to prevent the illegal use by one of what can properly be used only under public franchise. But the rights of a private individual injured by another need not await such action by public authorities. In the case of nuisance injunction is the most efficacious remedy.

Street Railway—Jitney.

6. Whether a street railroad can prohibit the business of jitneys running along side is not necessarily covered by the pleadings, and is not decided.

Opinion filed January 27, 1919.

Mr. J. Henri Brown for plaintiff.

Mr. H. G. Molina for defendants.

HAMILTON, Judge, delivered the following opinion:

The bill in this case was filed May 20, 1918, by a street car company against some forty-four owners or operators of automobiles between the main plaza in San Juan and stop 25 in Santurce, alleging that the latter were irresponsible financially, and conducted what is called a jitney business, and were without a franchise, carrying the public for hire along the same or a paral-. lel route with the plaintiff, which had constructed its plant at an expense of a million and a half dollars under franchise granted by the Executive Council of Porto Rico in 1911, and duly approved by the governor and by the President of the

United States. Further allegations develop the charge that the defendants are conducting their business in a reckless manner, obstructing the highways, and causing a loss of from three to four hundred dollars a day to plaintiff by their competition. The bill seeks an injunction against the defendants for so carrying on the business of common carriers in competition with plaintiff. Answer on oath being waived, the defendants on November 22 filed a short answer denying seriatim the different statements of the bill, except so far as they relate to parties and the business of the plaintiff and defendants, and further denying the jurisdiction of the court in virtue of domicil of the parties and nature of the cause of action, and because the bill states no matter of equity, and prays no preliminary injunction.

Upon the cause being set down for hearing upon sufficiency of the answer, the only points urged are those as to the necessity of the defendants obtaining a franchise and the right of the plaintiff to proceed against them for failure to do so.

1. It is contended by the defendants that their business is that of common carrier, which is a common-law right, and does not depend upon statute. It has been held that the business of a common carrier is general and has its foundation in the common law, needing in itself no legislative authority, that it is not a franchise, and that even a foreign corporation may exercise a carrier business and like any other citizen of the state use the highways, this being a matter of common right. McGregor v. Erie R. Co. 35 N. J. L. 89, 96. A railroad, on the other hand, for public use is publici juris, and cannot be legally erected without legislative permission, and railroad operation is therefore regarded as a franchise requiring a specific grant from the legislature. Raritan & D. B. R. Co. v. Delaware & R. Canal Co.

18 N. J. Eq. 546. A public ferry is likewise a franchise, consisting not merely in the building of a ferry and boats, but in running them. It is, however, very difficult to draw the line to which the right as a carrier would extend and beyond which it might be regarded as an invasion of a franchise. McGregor v. Erie R. Co. supra.

This therefore brings up for consideration what is meant by a franchise. Leaving aside general uses of the word, it is essentially a special privilege conferred by the government on an individual, which does not belong to citizens of common right. 19 Cyc. 1452. Blackstone, expressing it under a monarchical government, defines a franchise as a royal privilege or a grant of the King's prerogative existing in the hands of a subject. 2 Bl. Com. 37. This has been substantially adopted, the expression being adapted to a republican form of government. It is pro tanto the exercise of the sovereign power of a state subsisting in a person or a corporation by a grant from the state. Rochester, H. & L. R. Co. v. New York, L. E. & W. R. Co. 110 N. Y. 128, 17 N. E. 680. Or, with reference specially to the method of acquisition, it is defined as a privilege of a public nature which cannot be exercised without a legislative grant. 19 Cyc. 1454, notes.

It is to be distinguished from the police supervision which a state may and indeed must exercise over all property and business, and may and must enforce over the exercise of franchises themselves when granted. Thus banking is a common-law right, and not a franchise. International Trust Co. v. American Loan & T. Co. 62 Minn. 501, 65 N. W. 78, 632. Although the right to issue notes is a franchise. Ib. A franchise when granted is property, often of great value. Beekman v. Third Ave. R. Co.

Porto Rico Railway, Light, & P. Co. v. Amador.

153 N. Y. 144, 47 N. E. 277.  A grant of a franchise pre-supposes a benefit to the public and an equal right on the part of every member of the public to participate in this benefit upon the terms prescribed by statute.  Rhinehart v. Redfield, 179 N. Y. 569, 72 N. E. 1150.

There is no question that the crowding of the vehicles and the congestion of the public streets caused by a common carrier are subject to police regulation, but that is equally true of a public meeting, which is a constitutional right.  The result seems to be therefore that there is a common-law right on the part of anyone to use the streets to carry passengers for hire, subject to proper police regulation.  This would be true of a street railroad but for the fact that this railroad has to lay a permanent track in the public highway for the purpose of carrying its passengers, which is unquestionably a franchise, as has been so construed from the beginning of railroads.  We are confronted now by the situation that a street railroad with a large investment of money has to compete with common carriers using the same street but not requiring a permanent track, and, according to the allega-tion of the bill, cutting into the earnings of the street railway itself; and yet a street railway requires a franchise, while at common law the competing business does not.

2. This brings up the interesting question whether the com-mon law as to franchises applies in Porto Rico.  There is no question that Porto Rico is a civil-law community, having not only inherited the civil law of Spain, but in so many words re-adopted it in the revision of March 1, 1902, and the Organic Acts both of 1900 and 1917 provide, the latter in § 57:  "That the laws and ordinances of Porto Rico now in force shall con-tinue in force and effect."  There is a well-marked distinction in

Porto Rico Railway, Light, & P. Co. v. Amador.

all systems between public and private law, but the Spanish Civil Code, in force in Porto Rico, has not limited itself to private law. Thus §§ 327 and 328 provide as follows:

Section 327. "The following are things of public domain: Those intended for public use, as roads, canals, rivers, streams, and others of a like nature."

Section 328. "The property of public use in Porto Rico and the towns thereof comprises the Insular and local roads, the squares, streets, fountains and public waters, walks, and public works for general use, paid for by the said towns or from the Treasury of Porto Rico . . . ." [Compilation 1911, §§ 3397, 3398.]

Substantially the same provisions prevail in Louisiana as part of the Code Napoleon readopted there. Indeed it may be questioned whether there is any serious difference between the common law and the civil law as to ultimate ownership of such public places.

The question at issue in the case at bar is not as to the ownership of the land of the Carretera or public highway, but as to the right of user of that Carretera by individual citizens. If there be any difference between the civil law and common law in this regard, it is in connection with the political government, the control to be exercised by the state, whenever the sovereignty may be held to reside. There can be no doubt that, although private rights and civil law were retained in Porto Rico by the will of the American government when it succeeded to the sovereignty formerly held by Spain, political rights of all kinds were thenceforward to be the same in Porto Rico as on the mainland of the United States. That is to say, that all political principals for the future were changed from Spanish or civil law

and became American or common law.  It is only this class of rights which is at issue in·the case at bar, and 'as to them whatever is law on the mainland is to be held law in Porto Rico except as changed by statute.  Whatever rights exist as to the use of public places in Porto Rico are to be decided according to the principles of the freer common law prevailing in the United States.  The Civil Code of Porto Rico and all rights derived therefrom are fully in force, but they are not affected by the issue now presented.

3.  Public highways in Porto Rico are by law classed together, whether they be by land or water, and it has been previously determined by this court that a ferry is·public business requiring a franchise from the Executive Council.  Valdes y Cobian v. Grahame, 3 Porto Rico Fed. Rep. 417.  The powers of the Executive Council, to which the Public Service Commission has succeeded, are very broad.  Arpin v. Porto Rico Power & L. Co. 2 Porto Rico Fed. Rep. 314.

It is quite true that there must be some right to use public streets vested in the public, or the streets could not in any proper sense be said to be public.  It would be unconstitutional for the Public Service Commission or any other governmental body to require a man to take out a license to walk on the sidewalks. On the other hand no private individual can use the streets, whether sidewalk or roadway, in the prosecution of his business without consent of the public.  Nor can he use the roadway as a common carrier for private gain without public consent, for the use of the streets as the main instrumentality of business is accorded as a mere privilege, and not as a matter of public right, and this must be held as absolutely established by authority. Hadfield v. Lundin, 98 Wash. 657, L.R.A.1918B, 909, 168 Pac.

Porto Rico Railway, Light, & P. Co. v. Amador.

516, Ann. Cas. 1918C, 942. A public license to use a vehicle, however, is probably universally required in America, whether the vehicle be used for private or public purposes, inasmuch as the streets must be kept in special order for their accommodation, and special rules are required for proper policing. The usual common carriers are those by railroad and the like which necessitate a special use of the public street in the nature of the taking of public property. This requires a separate license or franchise. No reason appears why there should not be supervision, different in details but at least as stringent, of automobiles, which without regulation might become a "swarm of jitneys, . . . run by irresponsible owners, racing with the street cars for patronage, and otherwise imperiling the safety of the public," as described in Memphis Street R. Co. v. Rapid Transit Co. 133 Tenn. 99, L.R.A.1916B, 1143, P.U.R.1916A, 834, 179 S. W. 635, Ann. Cas. 1917C, 1045.

In Louisiana as here streets are public and for the common use, and individuals as members of the public have the right to use the public highways for the purpose of travel, but they have no right aside from express grant to carry on their business in the highways. An individual can acquire the right to carry on a business in the highways only from the public. An individual carrying on business as common carrier cannot select a street for the conduct of his business without regard to the views of the public officials any more than a street railway. New Orleans v. Le Blanc, 139 La. 113, 71 So. 248. There is no essential difference between the business of the plaintiff and the defendants. The plaintiff has a larger investment, because of the necessity of a fixed track and larger cars, but both plaintiff and defendants carry the public for hire between termini, and under the allega-

XI. Porto Rico.—12.

tions of the bill the business of the defendants thrives at the expense of that of the plaintiff. The form of grant may be different, but the necessity from the point of view of the public of some grant is as clear in the one case as the other.

4. Has there been any legislation of Porto Rico changing the old law upon the subject? There has unquestionably been in all America since the institution of railroad and similar commissions a gradual trend towards governmental supervision of public utilities. This was exercised in Porto Rico under the Foraker Act by the Executive Council and under the Jones Act by what is called the Public Service Commission. The Jones Act in § 38 provides:

"That all grants of franchises, rights, and privileges of a public or quasi public nature shall be made by a public service commission, consisting of the heads of executive departments, the auditor, and two commissioners to be elected. . . . The said commission is also empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the Executive Council. Franchises, rights, and privileges granted by the said commission shall not be effective until approved by the governor, and shall be reported to Congress, which hereby reserves the power to annul or modify the same. . . ." [39 Stat. at L. 964, chap. 145, Comp. Stat. § 3803p, Fed. Stat. Anno. Supp. 1918, p. 624.]

A separate provision in the same section empowers the legislative assembly to regulate rates, tariff's, and service of public carriers by rail, and the Public Service Commission has power to enforce such laws under appropriate regulation.

Under this an act was passed December 6, 1917, on the sub-

ject of public service companies. Section 2 thereof provides as follows:

"For the purposes of this act public service companies shall be such natural persons, or bodies corporate, as may engage in Porto Rico in any of the following pursuits or businesses:

"(a) Transportation of persons or freight using in whole or in part marine, fluvial or land routes.

"The term 'common carrier' as used in this act includes any natural person or body corporate engaged for profit in the conveyance of passengers or property or both in Porto Rico by any means of locomotion."

Section 52 of the act provides:

"The Commission shall have power to grant franchises, rights, privileges or concessions for public or quasi public purposes, including the right to use or cross roads, highways and public streams."

Section 54 provides:

"All grants of franchises, rights, privileges or concessions shall be subject to amendment, alteration or repeal by the Commission and shall provide for the same."

Section 57 provides:

"All grants of franchises and privileges to public service companies shall provide for the effective regulation of the charges thereof and for the purchase or taking of their property by the authorities at a fair and reasonable compensation."

On the one hand it is clear that jitneys are engaged in the business of "transportation of persons . . . using in whole or in part . . . land routes," and that they are common carriers as used in the act, for they are natural persons "engaged for profit in the conveyance of passengers, . . . by any means

of locomotion," within the terms of § 2. On the other hand the provisions as to schedules and rates in arts. 2 and 3 hardly apply to jitneys. The fact of the matter seems to be that jitneys had not become of public importance at the time when this act was passed, and it was not drawn with reference to them. This, however, does not change the fact that the general subject of common carriers is put under the control of the Public Service Commission, and that the right to use streets in the way practised by jitneys, in direct competition with a company required to take out a public franchise and alongside the tracks of that franchise company, is something for which the Public Service Commission under the broad terms of the Public Service Act have the right to require a franchise, whether all the details of the act apply or not.

The result, therefore, is that the jitney business is one properly coming under the regulation of the Public Service Commission of 1917.

5. Without question it is the duty of the public, through some office corresponding to the attorney general, to prevent the illegal use by anyone of what can be properly used only under a public franchise. In other words, if the use of the public streets by jitneys is properly to be considered a privilege, the public is interested and the public could by quo warranto, or other appropriate action prevent the defendants from exercising what has not been properly granted. The Porto Rico Act of December 6, 1917, § 94, expressly requires the Attorney General to proceed in the name of the people of Porto Rico by appropriate remedy at law or in equity to restrain such violations. In Baxter Teleph. Co. v. Cherokee County Mut. Teleph. Asso. 94 Kan. 159, L.R.A.1916B, 1083, 146 Pac. 324, it is held that

Porto Rico Railway, Light, & P. Co. v. Amador.

ordinarily the usurpation of a corporate privilege or public franchise can only be challenged by an action in the name of the state by its proper officer.

The public authorities have not taken this action, and there is nothing in the pleadings that requires the court to decide that they should do so. The question presented is whether, under the facts stated in the bill, the plaintiff has a right of action, or the matter must be left as at present until the public authorities think it proper to intervene. Under the allegations of the bill there is no question that such an action can be brought by the plaintiff; for it alleges not merely the absence of a franchise on the part of the defendants, but that the acts of defendants amount to a public nuisance which inflict special damage upon the plaintiff. Memphis Street Railway v. Rapid Transit Co. 133 Tenn. 99, L.R.A.1916B, 1143, and P.U.R.1916A, 834, 179 S. W. 635, Ann. Cas. 1917C, 1045, and citations. This is what is sometimes called a mixed nuisance as distinguished from a purely public nuisance. Wood, Nuisances, 35. It is actionable by a party suffering special damage. Lansing v. Smith, 4 Wend. 9, 21 Am. Dec. 89; Knowles v. Pennsylvania R. Co. 175 Pa, 623, 34 Atl. 974.

The rights of a private individual injured by another need not await action by public authorities. Every wrong imports a remedy, and in the case of nuisance injunction is the most efficacious remedy. Bouvier, Law Dict. s. v. Nuisance. So as to franchises. Joyce, Actions as to Corp. § 429.

6. Under the allegations of the bill it may not be necessary to decide at present another point which has been raised. It seems that where one person enjoys a franchise properly granted, this is to be considered as exclusive in him, and in some cases, as for

Porto Rico Railway, Light, & P. Co. v. Amador.

instance in that of a street railroad company with a fixed track and long-term franchise, it amounts further to a right of property, which cannot with impunity be disturbed by another who has not a franchise to carry on the business in question. This applies for the time being, even where the franchise in question is not absolutely exclusive and where the defendant can by proper steps qualify himself to receive a similar competing franchise. This principle has been denied in Coffeyville Min. & Gas Co. v. Citizens' Natural Gas & Min. Co. 55 Kan. 173, 40 Pac. 326, where it is said that a private person will not be recognized in a court of justice as a guardian of purely public interests, and similarly in Baxter Teleph. Co. v. Cherokee County Mut. Teleph. Asso. 94 Kan. 159, L.R.A.1916B, 1083, 146 Pac. 324, it was held that ordinarily the usurpation of a corporate privilege or public franchise can only be challenged by an action in the name of the state by its proper officer; as, for instance, in the case of railroads. A mere rival in business under these decisions would not have such an interest as to enable it to maintain an action of this character. Perhaps these cases cannot be considered as supported by the weight of authority. It would seem to be better law that the easement in the streets due to the older franchise constitutes property, which if it suffers special or peculiar damage will be protected by injunction. Memphis Street R. Co. v. Rapid Transit Co. 138 Tenn. 594, 198 S. W. 890; Dill. Mun. Corp. § 1244. The Coffeyville Case is expressly declared to have been *obiter* in Bartlesville Electric Light & P. Co. v. Bartlesville Interurban R. Co. 29 L.R.A.(N.S.) 77, and the main case is supported by extensive notes annexed.

However, it does not seem to be necessary to decide this point.

Porto Rico Railway, Light, & P. Co. v. Amador.

It follows that so much of the answer as is in the nature of a demurrer cannot be sustained.

It is so ordered.