In re O'HARRA BUS LINES, Inc.

No. 122–B.

United States District Court.   D. Alaska.
Fourth Division.   Fairbanks.
Sept. 11, 1948.

130

Hellenthal, Hellenthal & Cottis, of Anchorage, for plaintiff.

Cecil A. Roley, of Anchorage, for defendant.

PRATT, District Judge.

The above-entitled cause is a proceeding for the reorganization of a corporation under Chapter 10 of Title 11 U.S. C.A. A petition was filed August 6, 1948, and approved upon the 14th day of August, 1948. Upon the latter date, an order was issued in the cause staying all suits and actions against the debtor.

Cause Number A–4883 of the Third Judicial Division of this Court, entitled "Matanuska Valley Lines, Inc. versus O'Harra Bus Lines, Inc.," was commenced February 25, 1948, and is one of the pending actions covered by the above-mentioned stay order.

The Plaintiff in said A–4883 has filed a petition in this cause, asking that the stay order be modified so as to ex-

clude said cause Number A–4883, and to permit the restraining order entered in said cause to be in full force and effect, prohibiting the O'Harra Bus Lines, Inc., from acting as a common carrier in the town of Anchorage, Alaska, or upon its neighboring property, the Merrill Air Field.

The petition of the Matanuska Valley Lines, Inc., made the files of said cause A–4883, by reference, a part of the petition, so the Court will consider all matters appearing therein to the same effect as if transcribed into and forming a part of the petition.

For convenience, the Matanuska Valley Lines, Inc., will be referred to as Plaintiff, and the O'Harra Bus Lines, Inc., as Defendant.

The Plaintiff alleges that the common council of the city of Anchorage, Alaska, on the 24th day of February, 1946, approved Ordinance Number 164, entitled "An ordinance granting the Matanuska Valley Lines, Inc., an exclusive twenty-year franchise to use the streets of the city of Anchorage for the purpose of operating a motor bus or trolley bus as a common carrier under the name of the Anchorage City Transit System." It further alleges that at all times since the approval of said Ordinance, it has been operating bus lines as a common carrier in the city of Anchorage and vicinity. No mention is made of any operation of a trolley bus.

Plaintiff further alleges that the defendant has no franchise to act as common carrier in the city of Anchorage, but has been doing so to the damage of Plaintiff to the extent of $50 per day. In said cause A–4883, the Plaintiff prayed for damages and for an injunction pendente lite, restraining Defendant from operating buses as a common carrier within the city of Anchorage.

Upon the 12th day of August, 1948, the Honorable Anthony J. Dimond, Judge of the Third Division of said Court, granted said restraining order to be effective upon

Plaintiff filing a bond in the sum of $10,000, and procuring the approval of the same by the Judge or Clerk.

As section 29, Chapter 3, Title 11 U.S.C.A., provides that a suit founded upon a claim from which a discharge would be a release (such as cause number A–4883), pending against a person filing a petition (such as in 122–B), shall be *stayed* until the approval or dismissal of the petition, the stay is mandatory, and leaves nothing to the discretion of the Court. Star Braiding Co. v. Steinen Dyeing Co., 44 R.I. 8, 114 A. 129; Orgill Bros. v. Coleman, 146 Miss. 217, 111 So. 291; Gilbert's Collier on Bankruptcy, Page 226; 8 C.J.S., Bankruptcy, § 491, page 1367, note 16.

Said Section 29 is applicable to proceedings in re-organization of corporations. Sections 11, 502, 506, 516, all of Title 11 U.S.C.A.

As the restraining order was granted during the period between the filing of the petition and the approval thereof, it was at a time when the statutes mandatorily required a stay of all proceedings in pending suits. Inasmuch as the petition for reorganization was filed in the District Court for the Third Judicial Division of Alaska upon the 6th day of August, and was by the Honorable Anthony J. Dimond, Judge of that Court, transferred to the Fourth Judicial Division on the 7th day of August, it is thought that the comity of Courts, Ohio Motor Car Co. v. Eiseman Magneto, 6 Cir., 230 F. 370-376, which, to accomplish a stay of actions, requires notice of the bankruptcy or reorganization proceeding to be given to the State court in which the action is pending, does not apply to this case, the court having had actual notice of such pendency.

Plaintiff's attorneys maintain that the overruling in cause A–4883 of Defendant's demurrer to the amended complaint is res judicata on the question of whether or not it states a cause of action.

■■ It appears, however, that a number of controlling matters were not presented the Judge in said cause Number A–4883, and that "courts of bankruptcy are nonetheless separate and distinct courts; their jurisdiction in a bankruptcy proceeding is exclusive of all other federal courts, and cannot be surrendered (8 C.J.S., Bankruptcy, § 28, page 441)." Also, Section 3420, C.L.A.1933 provides that the question of whether or not a pleading states a cause of action can be raised at any time. It appears that the task of ascertaining whether or not Plaintiff has stated a cause of action in his entire proceeding must be examined into and decided by this court upon the present showing in this cause.

Plaintiff alleges that it has an exclusive franchise. In the Organic Act creating the Alaska Legislature, Congress provided in Section 475, C.L.A. '33, 48 U.S.C.A. § 77:

" * * * nor shall the Legislature grant any corporation, association, or individual any special or exclusive privilege, immunity, or franchise without the affirmative approval of Congress; * * * all laws passed, or attempted to be passed, by such Legislature in said Territory inconsistent with the provisions of this section shall be null and void: * * *."

■ It is not believed that Congress intended, as a penalty, that a law passed by the Legislature should be void in its entirety if it was void in any particular by reason of the prohibition above-mentioned, where, as in Ordinance 164 attached to the files in said A–4883, the invalid exclusive grant can be eliminated, leaving the valid part carrying out the purposes of the ordinance.

In Section 2383, C.L.A. '33, the Territorial Legislature gave the following powers to the council of a municipal corporation, to-wit:

"The council shall have and exercise the following powers: * * * Sixteenth: To grant franchises for the

construction and maintenance of electric light and power plants, water plants, telephone and other public service, and to permit the use of streets and other public places for a period of not to exceed twenty years, under such rules and regulations as may be prescribed by ordinance. * * *

"Twenty-first: By general ordinance to provide for the licensing and regulating of the use and operation of motor vehicles within the municipality and to prescribe the qualifications of persons operating or driving such vehicles; to classify motor vehicles and to prescribe special qualifications for persons operating or driving taxicabs for hire, automobiles, motor buses and other vehicles for the transportation of passengers or baggage; to regulate the operation of all such vehicles; to fix the fares that may be charged for the transportation of passengers and baggage within the municipality; * * *."

The question immediately arises as to whether the operation of motor buses in Anchorage is the subject of a franchise, or only of a license.

The words "other public service," appearing in the sixteenth subdivision, refer to some well known public utility similar to those mentioned just preceding the words. The sixteenth subdivision of Section 2383, C.L.A. '33, was taken from Chapter 97, Session Laws of Alaska 1923. The twenty-first subdivision of Section 2383, aforesaid, was Chapter 96, Session Laws of Alaska 1931. That the legislators did not regard the twenty-first subdivision as being in conflict with, or covering, the same matter in part as the sixteenth subdivision, is indicated by the fact that the Act of 1931 made no mention of any conflict or repeal. The twenty-first subdivision seems quite complete in itself, and requires the city council, when dealing with motor vehicles as common carriers, to act by general ordinance, not by special ordinance, such as is the case in granting franchises.

The rule is laid down in 59 C.J., page 981:

"Where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."

That the words "and other public service," appearing in said sixteenth subdivision of Section 2383, mean a service similar to those utilities just mentioned, is indicated by the use of the words "kindred public service" in Section 2412, C.L.A. '33, wherein it is provided:

"It shall be the duty of every person * * * operating within a municipality a public service plant or undertaking by such plant to supply the inhabitants of a city with telephone service, water, power, heat or light or kindred public service, to serve everybody alike * * *".

A franchise, as stated in California v. Southern Pacific Railroad Company, 127 U.S. 1–40, 32 L.Ed. 150, is "a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security. * * * No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived. These are franchises. * * * The list might be continued indefinitely."

In McPhee & McGinnity Co. v. Union Pac. R. Co., 8 Cir., 158 F. 5, 10, it is stated:

"A right or privilege not essential to the general function or purpose of the grantee, and of such a nature that a private party might grant a like right or privilege upon his property, such as a temporary or revocable permission to occupy or use a portion of some public ground, highway, or street, is a license and not a franchise. A privilege of the

latter character, such as a permission to lay and operate a railroad across or for a short distance upon a public street, is a grant of an easement or right of way. An easement or right of way is not necessarily a creation of or a grant by the sovereignty. A private citizen may confer it over his own land, and the permission by a city to exercise such a privilege on one of its streets is of even less efficacy than such a private grant, because it is subject to the rights of the abutting owners, while the private owner's grant confers the perfect right of way over his property. * * *

"The privilege which is the subject of this litigation is limited and local, and it was not indispensable to the general object or to the performance of the main function of the Union Pacific Company. It could maintain and operate its railroad into and through the city of Denver as well without as with the right to operate its spur tracks upon Blake street, and this privilege seems to be a license rather than a franchise."

The record shows that the Matanuska Valley Lines, Inc., also operate outside the city of Anchorage. It is not essential to the general function and purpose of that company that it operate buses within the city of Anchorage. The very mobility of motor buses makes it so easy for them to shift the scene of operations, that they are independent to a degree not shared by those in the business of distributing electric light, power and water, etc., for which franchises are unquestionably necessary.

In Lindsley v. Dallas Consolidated Street Railway Company, Tex.Civ.App., 200 S.W. 207, 212, a contest between jitneys and a street railway company, where the jitneys were authorized by ordinance to act as common carriers within the city, and their routes and charges were fixed by the city, the court held the right of the jitneys not to be franchises, stating:

"A franchise is property * * *. The right to use the streets under the ordinance in question is at most, we believe,

a permissive privilege. Certainly, it is not as is a franchise a vested property right."

Speaking of a license, it is stated in 53 C.J.S., Licenses, § 2, page 449:

"While it has been regarded, for some purposes, as a valuable property right, strictly speaking, it is not property or a property right, nor does it create a vested right."

From the above, it appears that the Matanuska Valley Lines, Inc., did not have a valid franchise, as the city had no power to grant a franchise for that purpose. It was required to provide for the operation of buses by general ordinance by the twenty-first subdivision of Section 2383, C. L.A. '33, and was not permitted to license by special ordinance as it attempted to do.

The Matanuska Valley Lines, Inc., does not make any showing of having a license as required by said twenty-first subdivision. Neither does the Plaintiff state that the O'Harra Bus Lines, Inc., is lacking in having such proper license. Plaintiff's complaint merely states that the Defendant has no franchise, which is very far from stating that it has no license.

Section 2411, C.L.A. '33, makes it unlawful for a corporation to use the streets of a municipality for public service except pursuant to the provisions of Chapter 97, S.L.A.1923. Section 2383 was a part of said Chapter 97.

Under the theory that the operation of buses in the city of Anchorage is the subject of a franchise, it is believed that in order to make a prima facie showing of a cause of action, and a right to an injunction, the Matanuska Valley Lines, Inc., must show a valid franchise upon their part, and the lack of a license from the city by the O'Harra Bus Lines. This showing has not been made.

To merit an injunction against a competitor, a plaintiff must show clearly a title and right in himself and

an unlawful invasion thereof by the defendant. 37 C.J.S., Franchises, § 30, page 194.

■ ] If the defendant were operating within the limits of the city of Anchorage without a license, a thing not alleged by plaintiff and not conceded herein by the defendant, plaintiff would not be entitled to a restraining order, but defendant would merely be subject to prosecution under an ordinance passed pursuant to the twelfth subdivision of Section 2383, C.L.A. '33, authorizing such an ordinance.

But even if Plaintiff had a valid franchise, and the Defendant had no license, the Plaintiff would not have a cause of action for damages and an injunction against Defendant. Supporting the above statement are the following cases:

Tennessee Electric Power Co. et al. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543. The Plaintiffs were owners of nonexclusive franchises to manufacture and distribute electricity. The defendant was doing the same thing in the same locality. It is stated:

306 U.S. at page 138, 59 S.Ct. at page 370: "They further urge that, though nonexclusive, the local franchises * * *, are also property which the Authority is destroying by its competition."

306 U.S. at page 139, 59 S.Ct. at page 370: "The local franchises, while having elements of property, confer no contractual or property right to be free of competition either from individuals, other public utility corporations, or the state or municipality granting the franchise. * * * The appellants further argue that even if invasion of their franchise rights does not give them standing, they may, by suit, challenge the constitutionality of the statutory grant of power the exercise of which results in competition. This is but to say that if the commodity used by a competitor was not lawfully obtained by it the corporation with which it competes may render it liable in damages or enjoin it from further competition because of the illegal derivation of that

which it sells. If the thesis were sound, appellants could enjoin a competing corporation or agency on the ground that its injurious competition is ultra vires, that there is a defect in the grant of powers to it, or that the means of competition were acquired by some violation of the Constitution. The contention is foreclosed by prior decisions that the damage consequent on competition, otherwise lawful, is in such circumstances damnum absque injuria, and will not support a cause of action or a right to sue."

306 U.S. at page 142, 59 S.Ct. at page 372: "The Authority's action in these states is consonant with state law, but, as has been shown, if the fact were otherwise, the appellants would have no standing to restrain its continuance."

In Baxter Telephone Company v. Cherokee County Mutual Telephone Association, 94 Kan. 159, 146 P. 324, 325, L.R.A.1916B, 1083, it is held as set forth in Syllabus Number 2:

"A telephone company has not that peculiar interest in the establishment of a second telephone company in a competitive field, as distinguished from the general public, so as to authorize it to maintain an injunction suit against its rival because that rival does not hold a license from the Public Utilities Commission, under Laws 1911, c. 238, § 31."

In Coffeyville Mining & Gas Co. v. Citizens' Natural Gas & Mining Co., 55 Kan. 173, 40 P. 326, 327, it was held as stated in Syllabus Number 2:

"A corporation organized for the purpose of supplying a city with natural gas, and authorized by an ordinance passed by the city council to use the streets and public grounds of the city for the purpose of laying its mains and pipes, has no standing in court to test the right of a rival company to use the streets for a similar purpose, or the validity of subsequent ordinances, under which the defendant claims the right to use the streets."

The court further held:

"It (the plaintiff) can neither test the validity of the ordinances under which the defendants claim a right to act, nor could it, if no ordinances had been passed, try the right of the defendant to lay pipes in the streets for the purpose of supplying natural gas."

In Market Street Railway Company v. Central Railway Company, 51 Cal. 583, it is held as stated in the Syllabus: '

"If one street railroad company is occupying or using a street without proper license to do so, it is no concern of another railroad company having a railroad on the same street, but must be inquired into by proceedings on behalf of the public."

Plaintiff has cited, as holding a contrary rule, the case of Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483, in which the plaintiff had a franchise to operate a cotton gin under a law providing that no one could procure a franchise for a cotton gin in that locality without first showing a necessity therefor to the Public Service Commission. Plaintiff averred there was no such necessity, and it was not denied. Though his franchise was not exclusive in its terms, the necessity requirement gave it a certain exclusive characteristic.

Frost merely sought to have the Corporation Commission restrained from issuing a franchise without a showing of necessity having been made. An amendment had illegally provided that co-operative associations did not have to make the necessity showing.

If the Frost case is any authority for Plaintiff's position, it is nevertheless superseded by the later case of the Tennessee Electric Power Company v. Tennessee Valley Authority, supra.

By reason of the foregoing, it is clear that the Matanuska Valley Lines, Inc., has failed to show a cause of action for damages, or for an injunction pendente lite, and the prayer of its petition should be denied.